**MESA AGRO, a division of Mesa Petroleum Co., Appellant,**

v.

**R. C. DOVE & SONS, Appellee.**

No. 6830.

Court of Civil Appeals of Texas, El Paso.

June 20, 1979.

Rehearing Denied July 18, 1979.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Midland, D. D. Dent, Barry F. Cannaday, Amarillo, for appellant.

John L. Shepherd, Seminole, Templeton & Garner, Robert E. Garner, Charles Watson, Amarillo, for appellee.

## OPINION

OSBORN, Justice.

This is a breach of contract suit involving an agreement to graze cattle for five years. Based upon jury findings, the trial Court entered judgment for the Plaintiff-Appellee for $325,000.00. We reverse and render.

On November 15, 1973, the parties entered into a "Pasture Agreement." The entire agreement provides:

Mesa-Agro, Seminole Division, will agree to put in the care of R. C. Dove & Sons cattle on a year around basis for the purpose of grazing for the Mesa-Agro.

The grazing agreement, the first winter season will be on the basis of $1.50 per hundred weight per month, based on the purchase weight of the cattle. Mesa-Agro also agrees to pay R. C. Dove & Sons $1.00 per head per month for the first sixty (60) days and $.50 per head per month for the remainder of the grazing period, for the care of said cattle. All drugs and salt or mineral will be provided by Mesa-Agro.

The basis of payment for grazing after the first winter season is to be determined and agreed upon by R. C. Dove & Sons and the manager of the Seminole Division of Mesa-Agro.

As long as all grazing agreements are honored and sufficient feed and water is provided for the cattle, Mesa-Agro agrees to provide cattle for R. C. Dove and Sons for a period of five years or R. C. Dove and Sons desire to cease.

The Court submitted two issues to the jury. They found (1) that after the first winter David Lowe (Appellant's manager) and Bobby Dove agreed that the payment schedule listed in the contract dated November 15, 1973, would continue to be the basis of payment for grazing for the remaining four years of the contract, and (2) the Plaintiff's net profit under the contract would have been $325,000.00.

The trial Court entered a judgment based upon that verdict on August 25, 1978. On August 31, 1978, the Defendant-Appellant filed a motion to set aside judgment, reciting an agreement with the Court that entry of judgment would be delayed until Defendant's Motion for Directed Verdict and objections to special issues had been transcribed and made available to Defendant. It further recites that, based upon the agreement, Defendant had not filed a Motion for Judgment or Motion for Judgment Notwithstanding the Verdict. On the same day, August 31, 1978, the Court granted the motion and ordered that the judgment en-

tered on August 25, 1978, "be and the same is hereby set aside." On September 18, 1978, Defendant filed its motion for judgment notwithstanding the verdict. On September 22, 1978, that motion was overruled. On October 2, 1978, the Court entered the same identical judgment which had been entered on August 25, 1978, except for the date of the judgment. Defendant then filed a Motion for New Trial on October 10, 1978. It was overruled on October 12, 1978. The appeal bond was filed October 25, 1978.

## MOTION TO DISMISS

The Appellee has filed a motion and an amended motion to dismiss for want of jurisdiction. The basis for the motion is that a trial court may not extend the time for appeal by re-entering a former judgment. Thus, it is contended that the time for filing the appeal bond began to run from August 25, 1978, and the bond filed on October 25, 1978, was not timely and thus this Court has no jurisdiction to hear this appeal. We disagree.

One of the leading cases on the issue is *A. F. Jones & Sons v. Republic Supply Co.*, 151 Tex. 90, 246 S.W.2d 853 (1952). In that case, the trial court enlarged the time for filing an original motion for new trial. The court held that "extend[ing] the time for filing a motion for new trial * * * is specifically prohibited by Rule 5, Tex.R.Civ. P." In reaching that result, the court found that "Here the trial court did not seek to alter, modify or set aside its judgment, which it has the inherent power to do, * * *." Thus, we can see that this case does not turn upon some action taken with regard to the judgment, but only with regard to an appellate step (filing a motion for new trial) after judgment.

■ The Texas Supreme Court has continued to recognize the plenary power of a trial court over its judgments until they become final. In *Mathes v. Kelton*, 569 S.W.2d 876 (Tex.1978), the court said:

A trial court has plenary power to reverse, modify, or vacate its judgment at any time before it becomes final.

One week after the *Mathes* decision, the court again stated that while the trial court has plenary power over its judgment, it has power to vacate that judgment. *Transamerican Leasing Company v. Three Bears, Inc.*, 567 S.W.2d 799 (Tex.1978). Of course, plenary power is that which is "Full, entire, complete, absolute, perfect, unqualified." Black's Law Dictionary 1313 (4th ed. rev. 1968).

We find no conflict between this power and the provisions of Rule 5, Tex.R.Civ.P., which provides that a court "may not enlarge the period for taking any action under the rules relating to new trials or motions for rehearing except as stated in the rules relating thereto or the period for taking an appeal or writ of error from the trial court to any higher court * * *."

■ First of all, there can be no appeal until there is a final judgment. As long as the trial court has plenary power, the judgment is not final. But, even during that period it may not extend the time for appeal as was attempted in the *Republic Supply Co.* case, but is most certainly may set aside or vacate its judgment and, when that is done, the appeal time should not begin to run until a final judgment is entered.

Appellant relies upon *Anderson v. Casebolt*, 493 S.W.2d 509 (Tex.1973); *Nolan v. Bettis*, 562 S.W.2d 520 (Tex.Civ.App.—Austin 1978, no writ); and *Stewart v. Fireman's Relief and Retirement Fund Trustees of the City of Austin, Texas*, 489 S.W.2d 743 (Tex.Civ.App.—Austin 1973, no writ). In *Anderson*, the trial court apparently attempted to set aside a judgment (in order to permit the filing of a motion for new trial) and enter another one more than thirty days after the original judgment and at a time when it had lost all plenary power. This, of course, it could not do and any appellate steps based upon the second judgment were a nullity. The facts in that case have no application to the case now before this Court.

In *Nolan v. Bettis*, supra, the trial judge, motivated by a sense of justice (and to permit the filing of a motion for new trial), set aside a judgment eleven days after it

had been signed. He had power to set it aside at any time within thirty days. Rule 329b, Tex.R.Civ.P. More than a month later, he signed a second judgment identical to the first judgment. Appellant then timely filed a motion for new trial and perfected an appeal from the second judgment. The Court of Civil Appeals held that the district court may not enter a second judgment that simply affirms a former judgment and thereby enlarged the period for perfecting an appeal. The Court went further and held that a judgment nunc pro tunc on February 5, 1977, was valid and dismissed the appeal because there had not been a final judgment entered.

Justice Shannon in *Nolan v. Bettis* followed his earlier opinion in *Stewart v. Fireman's Relief and Retirement Fund Trustees of the City of Austin, Texas,* supra. This is another case where a trial judge, motivated by a sense of justice and recognizing a right to appeal, set aside a prior order overruling a motion for judgment nunc pro tunc and then re-entered the same order (thereby permitting the timely filing of a notice of appeal) from which an appeal was timely perfected. In dismissing the appeal, Justice Shannon said:

> Though the court, after the entry of judgment, has the inherent power for thirty days to set aside, modify, or amend that judgment,[1] the court may not enlarge the period for taking an appeal.[2]
>
> In setting aside the order of April 12, and in entering its new order of May 15, the court made no change in the original order, but rather entered the new order in the precise terms of the original one for the express purpose of enabling the appellant to perfect her appeal. ·

The same results were reached in *Chantre v. National Maritime Union Pension & Welfare Plan,* 425 S.W.2d 659 (Tex.Civ.App.—Beaumont 1968, no writ).

What is the net effect of the rule announced in these cases? First, it seems that if he so desires any trial judge may avoid an appeal in any case. He simply enters a judgment, within thirty days while he has plenary power sets it aside, and later re-en-

ters an identical judgment. We do not believe the rules were intended to provide such a trap for the innocent nor a way to avoid the appellate review provided by those same rules. Second, the trial judge who in good faith and for a valid reason sets aside a judgment, as was done in this case, is faced with two alternatives. He may continue with the judgment set aside, which is effect results in a new trial, or he may re-enter the same judgment and thus deny a right of appeal. Neither alternative will meet with his sense of justice in a case such as is now before the Court. Neither do these alternatives meet with our sense of justice.

■■■ We believe the preferable rule is one which is consistent with both the holdings in the *Republic Supply Co.* case and the *Mathes* case. We do not believe the trial court should be permitted to extend the time for appeal by permitting the late filing of a motion for new trial or a bond or a notice for appeal where required. But, so long as the trial court has plenary power over its judgment and before it becomes final, it may enter, vacate and re-enter any judgment as justice dictates without destroying a right of appeal. Rule 5, Tex.R. Civ.P., is directed toward enlargement of the time for the taking of an appeal. It is not directed to the entry of judgment from which time to appeal commences.

■■ There is *nothing* in the Rule related to the reason for entering a second judgment. Thus, there is no condemnation of a second judgment where the judge in the interest of justice provides a way for the timely filing of a motion for new trial, but at the same time enters a second judgment to correct a judicial error. If a second judgment if condemned in one instance, it is necessarily condemned in all instances insofar as the time for perfecting appeal under Rule 5, Tex.R.Civ.P., is concerned.

In *City of West Lake Hills v. State ex rel. City of Austin,* 466 S.W.2d 722 (Tex.1971), the court's opinion reflects that there was a jurisdictional challenge for failure to timely file the record with the Court of Civil Ap-

peals. The opinion reflects that a judgment was entered on January 9, 1970, and a second "Corrected Final Judgment" was entered on February 5, 1970. The court concluded that since the record was filed within twenty days after the entry of the second judgment the record was timely filed. There can be no contention but that the entry of a second judgment enlarged the time for filing of the record, because otherwise the record would have had to have been filed within twenty days from the entry of the first judgment on January 9, 1970. In that case, the court held that the record was timely filed and the results we have reached in this case are consistent with the results in that case.

In *Mathes v. Kelton*, 565 S.W.2d 78 (Tex. Civ.App.—Amarillo 1977), the court noted in its opinion that an appeal had been perfected from a judgment nunc pro tunc correcting a clerical error in the original judgment. In that case, the original judgment was entered on December 3, 1976. A motion for new trial was filed on December 13, 1976, and on that same date a second judgment was entered but it did not vacate the first judgment. An amended motion for new trial was timely filed on January 3, 1977. The amended motion for new trial was overruled on February 9, 1977. On February 11, 1977, the trial court rendered a "corrected judgment" which was rendered nunc pro tunc.

The Supreme Court held that the February 11 judgment could not be upheld as a nunc pro tunc judgment. *Mathes v. Kelton*, 569 S.W.2d 876 (Tex.1978). Thus, Rule 306b, Tex.R.Civ.P., has no application to the appeal in that case. In its opinion, the Texas Supreme Court said:

> The rendition of the February 11 judgment, two days after Mrs. Mathes' amended motion for new trial was overruled, occurred within the trial court's period of plenary power over its judgment. The judgment of February 11 is therefore a valid final judgment.

Certainly if, as the Court of Civil Appeals said, the appeal was perfected from the February 11 judgment, that "corrected" judgment certainly extended and enlarged the time from which the appeal should have been perfected from the December 3, 1976, judgment. Again, the results which we have reached are consistent with the holding by the Supreme Court in the *Mathes* case since that case involved a second judgment and not an order extending the time for some procedure concerning appeal after judgment.

We recognize that most if not all of the cases which have been decided on this issue have turned upon a determination as to whether or not the second judgment made material changes and corrected the first judgment, or whether it was a re-entry of an identical judgment. Rule 5 does not contain that distinction. In most of the cases, the courts have recognized the plenary power of a trial judge to set aside or vacate his judgment. In the *Mathes* case, the court noted that the *rendition* of the second judgment "occurred within the trial court's period of plenary power over its judgment." If, as that decision indicates, a trial court has plenary power to render a decision, it must necessarily have the right and power to re-enter the same judgment during the period when it may exercise plenary power. Any other rule only fosters the injustices which occurred in the *Nolan, Stewart*, and *Chantre* cases. The rule which we follow permits the trial court to exercise both sound discretion and plenary power over his judgment and avoids an appellate trap for those who are unaware of trial court traps which may be set accidentally, unintentionally, and in good faith.

But regardless of the fact that Rule 5 makes no distinction with regard to a second "corrected" judgment, all of the above cited cases upon which Appellee relies are distinguishable. In each of those cases, the trial court expressly noted that the second judgment was entered to give a right of appeal which had been lost by a failure to timely file a motion for new trial or a notice of appeal. In this case, no right had been lost and no appellate time had expired when the trial Court set aside its judgment only six days after it was en-

tered. The motion and amended motion to dismiss are denied.

### ON THE MERITS

■ Appellant's first three points of error attack the contract as being unenforceable. "It is essential to the validity of a contract that it be sufficiently certain to define the nature and extent of its obligations. If an agreement is so indefinite as to make it impossible for a court to fix the legal liability of the parties thereto, it cannot constitute an enforceable contract." *Moore v. Dillworth*, 142 Tex. 538, 179 S.W.2d 940 (1944). An agreement to be enforceable as a contract must be definite and certain as to quantity or amount involved and where it is impossible to ascertain the amount or quantity, the agreement is not binding. 17 Am.Jur.2d Contracts sec. 81.

In *Terrell v. Nelson Puett Mortgage Company*, 511 S.W.2d 366 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.), the court affirmed the denial of relief to either party for the reason that their agreement was too indefinite to be enforced and said:

> One requirement of a legally binding promise is that it be sufficiently definite in its terms to enable the court to understand what the promisor undertook. *Moore v. Dillworth*, 142 Tex. 538, 179 S.W.2d 940 (1944), *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966). A lack of definiteness in an agreement may concern various elements, among others, as the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred.

■ We find the "Pasture Agreement" contains no provision as to (1) the number of cattle to be pastured, (2) the weight of the cattle to be pastured, or (3) the length of time the cattle are to be pastured. The amount to be paid by Mesa Agro to R. C. Dove & Sons is contingent upon each and all of these factors. Without 'all three, there can be no determination of damages resulting from a breach of the contract. We conclude that the contract is unenforce-

able and sustain Points of Error I, II and III.

■ The next two points of error assert that the contract was terminable at the will of either party and Appellees cannot recover damages because of Appellant having terminated the contract. Mesa Agro paid the Doves for all sums due for pasturing cattle up to September 11, 1974, at which time the contract was terminated. The suit for lost profits is for the period after that date. Clearly, the last line of the contract gave R. C. Dove & Sons a right to cease and to terminate the Pasture Agreement at any time they chose to terminate during the five year period. This right is set forth without any limitation. In *Bradshaw v. Terrell Foundry & Machine Co.*, 104 S.W. 509 (Ct.Civ.App.1907, no writ), the plaintiff testified as to an agreement to purchase scrap iron that the defendant then had on hand, and all it should afterward acquire until the agreement was terminated. He said he was to have the right to terminate the contract whenever he chose. In considering this issue, the court said:

> The trial judge seems to have been of the opinion that the contract was void for want of mutuality. The contract, according to the testimony, was for the purchase by plaintiff of the defendant of all the wrought and steel scrap iron it then had on hand, and all that should afterwards be acquired by it in its business, until the agreement was terminated; and it could be terminated at the will of the plaintiff. This stipulation made the contract indefinite, and as to future purchases determinable at the will of either party. *Railway Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 13 Am.St.Rep. 758; *Railway Co. v. Mitchell*, 38 Tex. 86; *Gas Co. v. El Paso*, 22 Tex.Civ.App. 309, 54 S.W. 800; *Railway Co. v. Morris*, 29 Tex.Civ.App. 491, 69 S.W. 102; *Coffee Co. v. Guenther Groc. Co.*, 80 S.W. 1170, 26 Ky. Law Rep. 270.'

Illusory and Alternative Promises are considered in Restatement (Second) of the Law, Contracts 2d sec. 79 which says: "Words of promise which by their terms

make performance entirely optional with the 'promisor' do not constitute a promise." The following illustration is given:

2. A promises B to act as B's agent for three years from a future date on certain terms; B agrees that A may so act, but reserves the power to cancel the agreement at any time. B's agreement is not consideration, since it involves no promise by him.

Of course, there was consideration flowing between the parties so long as the agreement was being performed by each of them. But not after the agreement was cancelled, and all damages are sought for a period after and not before the time the contract was terminated. We sustain Points of Error IV and V.

Point of Error VII complains of the trial Court overruling its objections to the damage issue and its motion for judgment non obstante veredicto because the evidence of future profits from a new business were uncertain and speculative. This agreement was effective about nine months, from November 15, 1973, to September 11, 1973. During this time, Mesa Agro paid the Doves $28,976.27 for grazing cattle. Bobby Dove estimated his cost of operation during this period was about twice that amount. Of course, he estimated that as the operation continued there would be a substantial profit each year. For four years he estimated the net profit at $281,705.60 on the Tatum, New Mexico, pasture and $139,-044.60 on the Gaines County pasture. Of course, these figures were calculated at 5 head of cattle per acre per month at an average of 400 lbs. each for a period of six months a year, and an average of 1 head of cattle to every two acres for five months each year.

Our courts have consistently denied a recovery of damages where the profits claimed are too uncertain or speculative where the business is new or uncertain. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938); *City of El Paso v. State Line, Inc.*, 570 S.W.2d 409 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Atomic Fuel Extraction Corporation v. Slick's Estate*, 386 S.W.2d 180 (Tex.Civ. App.—San Antonio 1964, writ ref'd n.r.e.).

In this case, the rule is applicable not only because of a new business, and profits, if any, were very speculative, but also because the number of cattle to be pastured was not specified in the contract. Thus, any testimony as to how many cattle might be pastured at any given time were based on assumptions of the witness as to how many cattle could be pastured, and not how many would have been pastured had the contract not been terminated. Point of Error VII is sustained.

Each of the points which we have sustained requires that the judgment of the trial court be reversed and judgment rendered for the Appellant. Most of the other points relate to matters which if sustained would only result in a remand and it is not necessary that we consider them.

The Appellee has a cross-point attacking the jurisdiction of this Court because a cost bond was not filed within thirty days after the entry of judgment. We have previously considered that issue with regard to the motions to dismiss. For the reasons stated in that part of this opinion, the cross-point is overruled.

The judgment of the trial Court is reversed, and judgment rendered that the Appellee, R. C. Dove & Sons, have and recover nothing from the Appellant, Mesa Agro, a Division of Mesa Petroleum Co.