TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








ON MOTION FOR REHEARING









NO. 03-97-00433-CV







Debra Bodenschatz, Appellant



v.



Eric Robert Bodenschatz, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-05177, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING 







 Appellant, Debra Bodenschatz, appeals a final divorce decree awarding sole
managing conservatorship of two minor children to appellee, Eric Bodenschatz. To address
certain issues raised in the motion for rehearing we withdraw our earlier opinion and judgment
issued February 20, 1998, and substitute this one in its place. We will affirm the decree.


BACKGROUND

 The factual and procedural history of this case is complex. Debra and Eric married
in 1989 and had two children during their marriage. Over the next several years, the relationship
between the parties deteriorated. Eric left the family home and filed for divorce in May 1996. 
Late that month, the trial court designated Eric and Debra temporary joint managing conservators
of their two young daughters.

 Over the course of the summer and fall of 1996, Eric and Debra had an extremely
contentious relationship and were unable to adhere to the temporary orders made by the trial
court. Both parties accused each other of committing family violence and harassing the other,
sometimes in the presence of the children. Eric also accused Debra of having substance-abuse
problems. Both parties filed various motions for protective orders, motions to modify protective
orders, motions to modify the court's temporary orders, and motions to enforce the court's
temporary orders.

 On October 16, 1996, the trial court conducted a hearing on one of Eric's motions
and rendered an "interlocutory decree" that divorced the parties and distributed the property. (1) 
The trial court did not resolve the issue of child custody and appointed the State temporary
managing conservator of both children. The court ordered that the entire family be evaluated by
a psychologist. The court also appointed an attorney ad litem to represent the children. 

 The children remained in the custody of the State until November 1, when the court
conducted a hearing and reviewed reports made by a representative of Child Protective Services
("CPS") and the psychologist. The court noted that the CPS worker recommended the court place
the children in Eric's custody. On November 14, the court allowed Debra's attorney to withdraw
from representing her. 

 On December 2, the trial court rendered a final divorce decree and named Debra
sole managing conservator of the children, despite the CPS worker's recommendation. The court
designated Eric possessory conservator and awarded him standard visitation rights with minor
variations. The court also ordered the parties to exchange the children for visitation at Kids
Exchange, a facility designed to help feuding parents exchange children without contacting each
other.

 At the court's written suggestion, the attorney ad litem for the children filed a
motion for new trial to extend the court's plenary jurisdiction. See Tex. R. Civ. P. 329b. During
the month of December 1996, the parties were unable to adhere to the visitation schedule in the
final decree. On December 20, the court entered a protective order prohibiting Debra from
communicating with Eric or committing family violence against him.

 In January, the attorney ad litem for the children filed a motion to enforce certain
visitation provisions of the final divorce decree. See Tex. Fam. Code Ann. § 157.001 (West
1996). The motion alleged Debra violated the decree three times by failing to take the children
to Kids Exchange so that Eric could visit them. The motion requested the court hold Debra in
contempt and punish her by assessing a fine or confinement in the county jail. The court set a
hearing on the motion for January 31, 1997.

 On January 31, the court called the hearing on the motion for contempt. Debra was
about one hour and forty-five minutes late for the hearing, and she brought the children to the
courthouse. When she arrived, she informed the court that she was unable to afford an attorney. 
The court appointed her an attorney and recessed the hearing for about one hour. See Tex. Fam.
Code Ann. § 157.163 (West 1996).

 When the court resumed the hearing, Debra's attorney asked for a continuance. 
See id. § 157.163(f). The court denied the motion and heard evidence on the alleged violations
of the visitation provisions of the decree. Debra explained that she failed to surrender the children
at Kids Exchange in December because she and Eric had reached an agreement to alter the court-ordered visitation schedule in December. Eric denied that he had ever agreed to Debra's proposed
changes. Debra also contended she failed to take the children to Kids Exchange because she was
under the mistaken impression that she only needed to do so if the facility called her first. The
court heard testimony from employees of Kids Exchange, however, who explained that Debra
knew she needed to bring the children without first being prompted by the facility. Furthermore,
at one point in the hearing, Debra admitted to refusing Eric visitation simply because she was
"uncomfortable" with the fact that he was living with his new girlfriend. At the end of the
hearing, the court found Debra in contempt for twice violating the decree and sentenced her to
six months in jail. 

 The court temporarily ordered the children to Eric's custody and stated orally from
the bench that he was not to take the children out of Travis County. Sometime over the next
week, Eric flew the children to Florida to stay with his mother. He brought them back soon
thereafter.

 On February 14, 1997, the court conducted a hearing to consider suspending
Debra's jail sentence and to consider the pending motion for new trial. The court agreed to
suspend the rest of Debra's sentence. The court also admonished Eric for taking the children out
of the county, but did not hold him in contempt because the order had not been in writing.

 By decree rendered at this hearing and signed on March 21, 1997, the court
reversed the custody arrangement in the original divorce decree to award sole managing
conservatorship to Eric. The court awarded Debra possessory conservatorship.

 Between the February 14 hearing and the time the court signed the March 21
decree, Kids Exchange suspended Debra from using its services. Presumably for that reason, the
court amended the final decree to require the parties to exchange the children for visitation in the
lobby of the Austin Police Department. The court signed this final decree on April 11, 1997. 
Debra requested findings of fact and conclusions of law. See Tex. R. Civ. P. 296. The court
issued findings and conclusions, including the following finding: "It is in the best interest of the
children that Eric Bodenschatz be appointed sole managing conservator of the children, and that
Debra Bodenschatz be appointed possessory conservator of the children." (2)

 Debra appeals the final divorce decree in one point of error. She alleges the trial
court abused its discretion in transferring managing conservatorship from her to Eric. 


DISCUSSION

 A trial court has broad discretion in deciding child custody issues. See, e.g.,
Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). The best interest of the child must
always be the primary consideration of the court in determining issues of conservatorship and
possession. Tex. Fam. Code Ann. § 153.002 (West 1996). We will not disturb a trial court's
child-custody decision unless the record as a whole shows the trial court abused its discretion. 
See, e.g., Gillespie, 644 S.W.2d at 451. That is, we will not reverse the decision unless the trial
court acted without reference to any guiding rules or principles. See, e.g., Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).

 The record reveals the following facts in favor of granting Eric custody of the
children. First, Eric testified at the October 16 hearing that he played a large role in the day-to-day care of both girls during his marriage to Debra. According to Eric, he got the older child
ready for school in the morning, took her to school, took off work in the middle of each day to
take the child home from school, returned home after work to feed and bathe the children and put
them to bed. Eric alleged Debra had a habit of drinking liquor in the afternoon before he returned
home from work. After the parties separated, the psychologist who evaluated Eric opined that
he was psychologically fit and showed only situational anger toward Debra over the divorce. 
Furthermore, the CPS worker who evaluated the family recommended the children be placed in
Eric's custody. 

 The evidence also suggests Debra had problems dealing with her anger and was
acting out in ways that were detrimental to the children. For example, Eric testified that Debra
had been in arguments with several neighbors and that the police had been called to respond to
these arguments on at least two occasions. As a result, Eric and Debra's children could no longer
play with their friends in the neighborhood. Eric and a police officer testified about another
instance in which Debra had gone to Eric's home, while intoxicated, and had damaged Eric's door
with a tire tool. Eric alleged that Debra sometimes left their five- and three-year-old children
home alone. Furthermore, Debra apparently was unwilling to comply with the court's visitation
order and was substantially interfering with the children's ability to see Eric. Finally, the record
suggests Debra was disruptive at the children's school and at Kids Exchange, which several times
resulted in the children being transferred back and forth between the parents over extremely short
periods of time and resulted in the children missing scheduled visits with Eric.

 Debra concedes that the record as a whole supports an award of custody to either
parent, including Eric. She contends, however, that the court must have based its final decision
to award Eric custody only on the evidence presented at the contempt hearing, because that was
the only evidence presented between the time the court rendered the original decree and the time
it rendered the final decree. She further argues the court necessarily abused its discretion in
considering this evidence because the court denied her due process in conducting the hearing when
her attorney had only one hour of notice. 

 We first note that the trial court had plenary power over the entire cause and
therefore had the power to change the divorce decree, even on its own motion. See Tex. R. Civ.
P. 320 & 329b(e); see also Mathes v. Kelton, 569 S.W.2d 876, 878 (Tex. 1978). We find no
authority for the proposition that the court's power to do so was limited by some requirement that
the court hear new evidence. The relevant rule of civil procedure does not limit the court's power
in this respect. See Tex. R. Civ. P. 329(e). Furthermore, some Texas courts have characterized
the trial court's plenary power as "full, entire, complete, absolute, perfect, and unqualified." See
Mesa Agro v. R.C. Dove & Sons, 584 S.W.2d 506, 508 (Tex. Civ. App.--El Paso 1979, writ ref'd
n.r.e.); see also Garza v. Serrato, 671 S.W.2d 713, 714 (Tex. App.--San Antonio 1984, no writ). 
We do not mean to suggest that a trial court may violate the law under the guise of its plenary
power. We simply intend to point out that a trial court need not hear new evidence before it
exercises its plenary power to reform a judgment. Cf. Allen v. Allen, 646 S.W.2d 495 (Tex.
App.--Houston [1st Dist.] 1982, no writ) (trial court orally ordered property division and changed
its mind, without hearing additional evidence, before signing the written order; appellate court
affirmed, holding trial court was within its plenary power and did not abuse its discretion). Based
on these principles and the evidence detailed above, it is clear the trial court could have changed
the original custody order without having held the contempt hearing and without having heard the
additional evidence therein presented.

 The question remains whether the existence of the evidence adduced at the allegedly
improper contempt hearing changes that fact. We note that Debra does not complain that the
evidence presented at the contempt hearing was inadmissible with respect to the issues of
conservatorship. She essentially complains that the trial court did not afford her an adequate
opportunity to prepare before presenting her side of the story. Debra does not challenge the
sufficiency of her notice of the hearing. See Tex. Fam. Code Ann. § 157.062(c) (West 1996). 
Rather, she contends her appointed attorney did not have enough time to prepare her defense to
the contempt action. 

 The court could properly have heard the evidence without appointing an attorney
for Debra if the court had not heard it in the context of a motion to incarcerate her. See Tex.
Fam. Code Ann. § 157.163(c). Therefore, the propriety of denying the continuance at the
contempt hearing, and whether Debra had effective legal counsel to assist her in telling her story,
bears only on the issue of whether Debra was properly incarcerated in accordance with her right
to due process. It does not bear on the ultimate issue of whether the court properly awarded
custody of the children to Eric. In other words, in deciding the custody issue, the trial court could
appropriately consider the evidence that demonstrated Debra's inability as managing conservator
to comply with the court's visitation orders, as well as the conclusions that followed from that
evidence. It may have been improper for the court to send Debra to jail without allowing her
attorney adequate time to prepare. (3) However, the propriety of imposing this punishment on Debra
is not at issue in this appeal. (4) We hold that the trial court properly considered the evidence
presented at the contempt hearing, as well as conclusions drawn from that evidence, for purposes
of deciding the custody issue or whether to grant a new trial, even though Debra's lawyer may
not have had enough time to prepare to defend against incarceration for the contempt charges. 

 In her final arguments, Debra suggests the trial court was inconsistent by failing
to hold Eric in contempt when he removed the children from Travis County in spite of the court's
oral admonishments. The propriety of that action is irrelevant to the issue of whether the record
supports the inference that Eric is an appropriate candidate for managing conservator. Debra also
contends the trial court took custody from her in an effort to punish her for violating the previous
court orders. Nothing in the record suggests the court removed the children from Debra's custody
as punishment. If anything, the record suggests that the court, despite the CPS worker's
recommendation that Eric be named managing conservator, gave Debra a chance to serve as
managing conservator, a chance that she botched by her complete refusal to afford any court-ordered visitation to Eric. The court properly took this, and everything else it had witnessed, into
account in reversing the original custody designation. Overall, the record supports the inference
that the children's best interests were served by Eric's having custody of the children.


CONCLUSION

 A thorough review of the clerk's and court reporter's records reveals these
proceedings were riddled with inappropriate, contentious behavior on the part of both parents. 
The trial court tentatively decided to grant Debra custody of the children but clearly had
reservations about doing so. The court then changed its ruling while it had plenary power over
the case. The court's ultimate decision is supported by enough evidence in the record, including
the evidence from the contempt hearing, that we cannot say the trial court acted without reference
to any guiding rules or principles. Therefore, we hold the trial court did not abuse its discretion
in changing its decree to name Eric managing conservator of the children. We overrule Debra's
point of error and affirm the judgment of the trial court.



 _____________________________________________

 Bea Ann Smith, Justice

Before Justices Aboussie, Jones and B. A. Smith

Affirmed

Filed: April 2, 1998

Do Not Publish

1. Eric was without counsel at this hearing and represented himself throughout the rest of the
proceedings.
2. It is not entirely clear that these findings and conclusions pertain to the April 11 decree. 
After the court signed the March 21 decree, Debra requested findings and conclusions that
corresponded to the March 21 decree. Before the court issued any findings, the court signed the
amended April 11 decree. Then on April 18, the court issued the findings and conclusions
referenced above. These findings and conclusions do not reference a particular decree. On
original submission, we assumed these findings and conclusions explained the March 21 decree,
not the April 11 decree. We so assumed because the record reveals that after the court issued the
April 18 findings and conclusions, Debra requested findings and conclusions that pertained to the
April 11 decree. This request suggests Debra did not consider the April 18 findings to reference
the April 11 decree. Otherwise, she would not have thought it necessary to request another set
of findings and conclusions. On rehearing, Debra contends the April 18 findings and conclusions
pertain to the April 11 decree. Because the findings and conclusions do not reference a particular
decree and were issued after April 11, we will now assume they reference the April 11 decree.
3. Section 157.163(f) of the Texas Family Code, pertaining to the appointment of attorneys
in contempt proceedings, reads:


If the respondent is not in custody, an appointed attorney is entitled to not less than
10 days from the date of the attorney's appointment to respond to the movant's
pleadings and prepare for the hearing.


Tex. Fam. Code Ann. § 157.163(f) (West 1996).
4. See U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 18; Tex. Fam. Code Ann. §
157.163(f). Decisions made in contempt proceedings are not appealable, even when the
contemnor attempts to bring the appeal along with a judgment that is appealable. See, e.g.,
Metzger v. Sebek, 892 S.W.2d 20, 54 (Tex. App.--Houston [1st Dist.] 1994, writ denied). A
contemnor may attack the validity of a contempt order only by a writ of habeas corpus or
mandamus. Id.; see also Tex. Fam. Code Ann. §§ 157.371-.376 (West 1996); McCoy v. McCoy,
908 S.W.2d 42, 43 (Tex. App.--Houston [1st Dist.] 1995, no writ). Debra did not assert her
statutory and constitutional claims through either of those vehicles.


g
to hold Eric in contempt when he removed the children from Travis County in spite of the court's
oral admonishments. The propriety of that action is irrelevant to the issue of whether the record
supports the inference that Eric is an appropriate candidate for managing conservator. Debra also
contends the trial court took custody from her in an effort to punish her for violating the previous
court orders. Nothing in the record suggests the court removed the children from Debra's custody
as punishment. If anything, the record suggests that the court, despite the CPS worker's
recommendation that Eric be named managing conservator, gave Debra a chance to serve as
managing conservator, a chance that she botched by her complete refusal to afford any court-ordered visitation to Eric. The court properly took this, and everything else it had witnessed, into
account in reversing the original custody designation. Overall, the record supports the inference
that the children's best interests were served by Eric's having custody of the children.


CONCLUSION

 A thorough review of the clerk's and court reporter's records reveals these
proceedings were riddled with inappropriate, contentious behavior on the part of both parents. 
The trial court tentatively decided to grant Debra custody of the children but clearly had
reservations about doing so. The court then changed its ruling while it had plenary power over
the case. The court's ultimate decision is supported by enough evidence in the record, including
the evidence from the contempt hearing, that we cannot say the trial court acted without reference
to any guiding rules or principles. Therefore, we hold the trial court did not abuse its discretion
in changing its decree to name Eric managing conservator of the children. We overrule Debra's
point of error and affirm the judgment of the trial court.



 _____________________________________________

 Bea Ann Smith, Justice

Before Justices Aboussie, Jones and B. A. Smith

Affirmed

Filed: April 2, 1998

Do Not Publish

1. Eric was without counsel at this hearing and represented himself throughout the rest of the
proceedings.
2. It is not entirely clear that these findings and conclusions pertain to the April 11 decree. 
After the court signed the March 21 decree, Debra requested findings and conclusions that
corresponded to the March 21 decree. Before the court issued any findings, the court signed the
amended April 11 decree. Then on April 18, the court issued the findings and conclusions
referenced above. These findings and conclusions do not reference a particular decree. On
original submi