Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB















Opinion issued December 14, 2006






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

                         For The

                      
First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00492-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



CYTOGENIX, INC., Appellant

 

V.

 

WILLIAM B. WALDROFF AND

APPLIED VETERINARY GENOMICS, INC., Appellees

 

 



On Appeal from the 11th District Court

Harris County,
Texas

Trial Court Cause No. 2004-06834








 

 



O P I N I O N

 

In this technology licensing case,
CytoGenix, Inc., appeals the trial court’s judgment and permanent injunction
rendered in favor of appellees, William Waldroff and Applied Veterinary
Genomics, Inc. (“AVGI”).  CytoGenix sued
Waldroff and AVGI, seeking a declaration that two license agreements between
CytoGenix and Waldroff are unenforceable.  AVGI and Waldroff counterclaimed for
declaratory relief and breach of contract. 
The jury found that CytoGenix breached the two agreements but awarded no
damages.  The trial court then entered
judgment, issuing a permanent injunction requiring specific performance of the
two licensing agreements, and awarding attorney’s fees to Waldroff and AVGI. 

We conclude that the trial court
erred in entering a permanent injunction that requires specific performance of
the licensing agreements because the agreements do not provide for specific
performance or otherwise support specific performance by permanent injunction
as a remedy.  We further conclude that
the trial court erred in awarding attorney’s fees to Waldroff and AVGI because
their claims for relief arise solely from breach of the licensing agreements,
and the jury found no damages for breach of these agreements.  Finally, we conclude that CytoGenix is not
entitled to its attorney’s fees upon reversal of the judgment against it.  We therefore reverse the judgment of the
trial court and render judgment that the parties take nothing on their claims
against each other.

 

FACTS AND PROCEDURAL HISTORY

The Parties and Their Dealings

CytoGenix, formerly known as
Cryogenic Solutions, Inc., is a Houston-based public company engaged in genetic
research and development.  At the time of
the jury trial in February 2005, CytoGenix had yet to show a profit, develop a
product for a clinical trial, or generate any significant revenue.  However, it owns a number of patents in the
area of genetic technology.  

In 1996, CytoGenix became interested
in developing gene silencing technology. 
In particular, CytoGenix sought to develop single stranded DNA (“ssDNA”)
that could control telomeres—the physical ends of linear chromosomes that play
an important role in cell division—by controlling the enzyme telomerase.[1]  One of the goals of ssDNA research is to
develop a pharmaceutical compound that will stop production of harmful
proteins.  A necessary starting point for
the research is the specific gene sequence for the cells under study, whether
they are from animals, plants, bacteria, or viruses. 

In 1998, Charles Conrad, a researcher
who has developed an ssDNA expression vector, conveyed the right to use his
technology to CytoGenix, together with a patent assignment.  Before that point, from late 1996 through
1998, Conrad provided consulting services to CytoGenix in its research
endeavors.  While Conrad was consulting
for CytoGenix, Mike Skillern, then CytoGenix’s president, approached Waldroff
with a request for funding for Conrad’s research.  Skillern and Waldroff discussed the
possibility that Conrad’s research could be useful for shrimp farms—either to
prevent disease or to grow larger shrimp. 
Waldroff paid CytoGenix $15,000 in exchange for an exclusive agreement
to use its ssDNA technology in connection with crustaceans.  Later, Skillern prepared a similar agreement
for horses and delivered it to Waldroff. 
Waldroff contends that he invested another $20,000 into CytoGenix in
exchange for the equine license.

After the parties executed the
crustacean license, Waldroff ventured briefly into creating a shrimp farm on
his land.  He bulldozed an area to build
tanks.  He filled the tanks with seawater
and placed live shrimp in them. 
Unfortunately, the seawater heated to a temperature that was too hot for
the shrimp and they died in three days. 
Waldroff froze the shrimp and ate them, and later filled the tanks with
dirt.  Waldroff testified that he would
not have begun a shrimp farm had CytoGenix not granted a license to him.  

Eventually, Waldroff assigned his
rights in the two licenses to AVGI.  AVGI
was founded by Dell Gibson, who is also one of the founders of CytoGenix.
Together with two other former CytoGenix board members, Gibson created AVGI to
focus on potential veterinary applications arising from ssDNA technology.  At the time this case was tried, AVGI,
CytoGenix, and some of their directors were embroiled in other litigation.  Malcolm Skolnick, the current chairman and
president of CytoGenix, was at odds with Charles Boyd and Charles Bardwell,
former CytoGenix directors who became directors of AVGI.  As Waldroff described it, despite his efforts
to reconcile those involved, “the animosity flowed” between CytoGenix and
AVGI.  

It was undisputed at trial that
CytoGenix has never developed any ssDNA for shrimp or for horses, and that
neither Waldroff nor AVGI had ever provided CytoGenix with the necessary gene sequencing
for any shrimp or horse cells so that CytoGenix could pursue ssDNA development
for cells found in those animals.[2]  Rather, other than sporadic discussions about
future technology development, activity pursuant to these licenses was dormant.

In February 2004, CytoGenix’s
attorney wrote Waldroff’s attorney that CytoGenix would “not recognize” the
license agreements.  After a further
meeting to discuss the licenses proved fruitless, CytoGenix filed this lawsuit,
seeking a declaration that the license agreements are unenforceable.

The License Agreements

CytoGenix and Waldroff entered into a
“Crustacean ssDNA Vector License Agreement” effective April 5, 1998.[3]  In the agreement, CytoGenix grants an
exclusive license of its ssDNA technology to Waldroff “to use, sell, or
license” the “technology or product(s) for use in Crustaceans.”  It further provides that CytoGenix retains
title and ownership of the technology.  

The parties executed the crustacean
agreement before its April 1998 effective date. 
After the effective date, CytoGenix sent Waldroff a written agreement
for an equine license, with the same effective date as the crustacean agreement
and the same terms.  Although Waldroff
signed a copy of the equine agreement, no party produced a copy executed by
CytoGenix, and the parties disputed at trial whether any existed—the jury
finding that it did.  Upon replacing the
term “crustacean” with “equine,” the provisions of the two agreements are
identical.  

In exchange for each license,
Waldroff agreed to pay a six percent royalty on any gross revenue realized from
the use or sale of CytoGenix’s ssDNA vector technology, including any revenue
from an increase in value of “crustacean [or equine] culturing products or
cultured crustaceans [or equines],” and a six percent royalty on any revenue
realized from licenses Waldroff might issue to third parties.  Waldroff is responsible for any direct
laboratory expense plus twenty percent for the production of ssDNA vector
sequence coding, to be performed by CytoGenix or a laboratory it approves.  The agreements do not, however, require
either party to develop or provide technology of any sort.  Waldroff is “responsible for providing DNA
sequence codes to be coded into the ssDNA vector for use by Waldroff or any
licensee.”

If Waldroff defaults, CytoGenix has
the right to cancel either agreement upon thirty days’ written notice, subject
to Waldroff’s opportunity to cure the default. 
Waldroff also has the unfettered right to terminate the agreement on
thirty days’ written notice.  But the
agreement does not provide a parallel termination provision for CytoGenix: no
clause allows CytoGenix to terminate the agreements, nor does one address the
effect of CytoGenix’s default, save that CytoGenix may not be liable for any
direct, indirect, special, or consequential damages.

 

The Lawsuit, Jury Verdict, and
Judgment

In
February 2004, CytoGenix sued Waldroff and AVGI in state district court,
seeking a declaratory judgment that the licensing agreements are void for lack
of essential terms and mutual mistake. 
Alternatively, it claimed that Waldroff breached the licensing
agreements.  AVGI and Waldroff
counterclaimed, seeking enforcement of the licenses, actual damages, and
attorney’s fees.  The case proceeded to
trial.

The jury
found that (1) CytoGenix granted a crustacean and an equine license to
Waldroff; (2) CytoGenix failed to comply with the terms of the licenses; (3)
Waldroff sustained no past damages for CytoGenix’s breach of the licenses; (4)
the equine license “exist[ed]”; (5) the crustacean license was “a reasonably
definite and certain agreement between the parties”; and (6) Waldroff did not
repudiate or breach the agreements.  In a
series of ancillary questions, the jury further found that (1) the parties did
not have “the same understanding of the subject matter of the contract” with
respect to the crustacean license, but the parties did not make any “mutual
mistake of fact” with respect to either license; (2) CytoGenix made a
“unilateral mistake of fact” with respect to both the crustacean and the equine
license; (3) CytoGenix did not terminate the licenses after a reasonable
period, but the parties did not intend for the licenses to be permanently
binding; and, in seeming contradiction of its other findings, that (4)
“essential terms are missing from both licenses.”  The parties stipulated to their respective attorney’s
fees.

In March
2005, the trial court entered a final judgment in favor of Waldroff and
AVGI.  In the judgment, the trial court
recited: (1) the crustacean and equine agreements are valid; (2) CytoGenix
breached the agreements; (3) any future damages are speculative and uncertain;
(4) the technology is covered, at least in part, by patents; and (5) no
adequate remedy at law exists for future breach.  It ordered that (1) CytoGenix supply Waldroff
with its ssDNA vector within forty-five days of any written request at a price
of its direct laboratory expense plus twenty percent; (2) should CytoGenix fail
to deliver its ssDNA vector at the ordered price, then Waldroff is granted the
right to obtain it from third parties without interference from CytoGenix; and
(3) should CytoGenix fail to deliver the ssDNA vector, it must provide
technical documentation to third party providers necessary to produce the ssDNA
vector, subject to a reasonable confidentiality agreement.  The court further awarded $45,000 in
attorney’s fees to Waldroff and $65,000 to AVGI through trial, plus additional
fees to both conditioned on further appeal of the case.  

CytoGenix
moved for a judgment notwithstanding the verdict, to disregard certain of the
jury’s answers, and for a new trial.  The
trial court denied the motions in a written order in April 2005.  This appeal followed.

ANALYSIS

On appeal, CytoGenix complains that
(1) the licensing agreements are unenforceable because they lack essential
terms, and the evidence is legally and factually insufficient to support their
enforcement; (2) the award of attorney’s fees to AVGI and Waldroff is
insupportable because the jury found no actual damages for breach of contract;
(3) the trial court’s permanent injunction is improper because the underlying
agreements do not support specific performance as a remedy, and AVGI and
Waldroff waived any claim for specific performance by submitting a claim for
past actual damages to the jury; (4) the trial court’s jury instructions are
flawed; (5) the agreement is unconscionable as a matter of law; and (6) certain
jury answers are against the great weight of the evidence.  CytoGenix further contends that it should
recover its attorney’s fees upon reversal of the judgment against it.

I. 
Breach of Contract

       CytoGenix contends that the judgment for breach of contract
against it should be reversed and rendered because (1) the licenses lack
essential terms; (2) there was no meeting of the minds sufficient to form a
contract; (3) the licenses are unconscionable; and (4) the jury’s findings do
not support a judgment for breach of contract. 
In connection with these claims, CytoGenix also contends that the
evidence against it is legally insufficient. 
CytoGenix alternatively contends that the evidence is factually
insufficient to support the judgment, requiring reversal and remand for a new
trial.  Finally, CytoGenix contends that
the trial court erred in charging the jury on the contract claim.  

Essential Terms

A
contract must be sufficiently definite in its terms to be legally binding.  T.O.
Stanley Boot Co. v. Bank of El
 Paso, 847 S.W.2d 218, 221 (Tex.
1992).  If an agreement is so indefinite
that a court cannot determine the legal obligations and liabilities of the
parties, it is not an enforceable agreement. 
Moore v. Dilworth, 142 Tex. 538, 542–43, 179
S.W.2d 940, 942 (1944).  An “essential” term is 

one that the
parties reasonably regarded, at the time of contracting, as a vitally important
ingredient in their bargain.  Failure to
fulfill such a promise, in other words, would seriously frustrate the
expectations of one or more of the parties
as to what would constitute sufficient performance of the contract as a whole.  

 

Neeley v. Bankers Trust Co. of Tex., 757 F.2d 621, 628 (5th Cir. 1985).

CytoGenix
observes that the licensing agreements lack a provision for termination by
CytoGenix or any term setting forth their duration.  Without such a provision, CytoGenix
maintains, no “meeting of the minds” occurred between it and Waldroff; thus,
the agreement is unenforceable.  AVGI and
Waldroff respond that, although the agreements do not provide that CytoGenix
can unilaterally terminate them without cause, it can on Waldroff’s default,
and Waldroff can upon thirty days’ notice. 
Thus, AVGI and Waldroff observe, the agreements provide for termination,
just not in terms favorable to CytoGenix. 
Moreover, though the jury found that the parties did not intend the
agreements to endure perpetually, Waldroff notes that the jury also found that
CytoGenix’s termination in this case was not after a reasonable period.

Some
courts have held that the absence of a duration term “does not necessarily
suggest that the parties did not enter into an enforceable agreement.” Avila v. Gonzalez, 974 S.W.2d 237, 244
(Tex. App.—San Antonio 1998, pet. denied) (noting that, “[w]hen the duration of
a contract is not expressly dictated by the agreement, courts will frequently
presume that the parties intended the agreement to last for a reasonable time”).  If no time for performance is stated in the
contract, the law may imply a reasonable one if the contract is “sufficiently
definite for a court to be able to fix the time when it can be enforced.”  Dilworth, 142 Tex. at 541, 179 S.W.2d at 942; Avila,
974 S.W.2d at 245 (noting that reasonable duration may be implied “in cases
where the agreement contemplates that one party will make substantial
expenditures or other investments in accordance with performance”).[4]  Thus, with some contracts, courts will
examine the surrounding circumstances to determine the parties’ intent as to
the duration of the contract, so long as a standard exists by which one can
test performance.  See Restatement (Second) of
Contracts § 33(2) (1981) (“The terms of a contract are reasonably
certain if they provide a basis for determining the existence of a breach and
for giving an appropriate remedy.”).

In other
cases, however, courts have concluded that a contract of indefinite duration is
not enforceable because duration is essential to testing performance.  See Oakrock
Exploration Co. v. Killam, 87 S.W.3d 685, 691 (Tex. App.—San Antonio 2002,
pet. denied) (holding that contract was unenforceable because it failed to
include essential terms pertaining to character, extent, and duration of parties’
rights); Collins v. Allied Pharmacy Mgmt.,
Inc., 871 S.W.2d 929, 933 (Tex. App.—Houston [14th Dist.] 1994, no writ) (noting
that letters “d[id] not set forth the alleged intended duration of three years,
which [wa]s an essential term”). 
Waldroff and AVGI allege CytoGenix breached the license agreements by
terminating them.  Thus, the agreements
here do not appear to provide “a basis for determining breach and an
appropriate remedy” because the agreements lack a duration provision and early
termination is the very source of CytoGenix’s alleged breach.  But this is juxtaposed against two jury
findings: that the agreements were not intended to be perpetual and that
CytoGenix’s “early” termination was unreasonable.

       When viewed from the standpoint of “appropriate remedy,”
however, the answer is plain.  Here, Waldroff
and AVGI do not challenge the jury’s finding against them that Waldroff
sustained no actual damages.  Because we
conclude that the only relief the judgment affords—a permanent injunction and
attorney’s fees—are not remedies available to AVGI and Waldroff, we need not
decide whether the agreements would be enforceable absent a duration term in
other circumstances.  Even assuming that
they are, Waldroff and AVGI are not entitled to the relief the trial court’s
judgment affords.[5]  

II.  The Permanent Injunction

CytoGenix requests that we vacate the
trial court’s permanent injunction for specific performance of the agreements
because (1) even if the agreements are sufficiently definite to bind the
parties, they are nonetheless insufficient to support a permanent injunction for
specific performance; and (2) AVGI and Waldroff did not otherwise establish the
elements necessary to obtain future specific performance as a remedy.  We conclude that the licensing agreements
lack the definiteness required for injunctive relief and that AVGI and
Waldroff’s claim for past actual damages based on the terms of the agreement
demonstrates that they have an adequate remedy at law.

Specific Performance via Injunction

In examining whether specific
performance via injunctive relief is available as a contractual remedy, courts
examine whether (1) an adequate remedy at law exists; (2) present performance
is possible; (3) the agreement contains precise terms capable of enforcement;
and (4) the injunction comports with the terms of the agreement.  We discuss each of these issues in connection
with the licenses here.

First, courts do not enforce
contractual rights by permanent injunction unless an aggrieved party can show
an inadequate remedy at law and irreparable injury.  Canteen
Corp. v. Republic of Tex. Props., Inc., 773 S.W.2d 398, 401 (Tex.
App.—Dallas 1989, no writ); Chevron U.S.A.
Inc. v. Stoker, 666 S.W.2d 379, 382 (Tex. App.—Eastland 1984, writ dism’d
w.o.j.).  An “irreparable injury” is one
for which actual damages will not adequately compensate the injured party or
the damages cannot be measured by any certain pecuniary standard.  Canteen
Corp., 773 S.W.2d at 401; Stoker,
666 S.W.2d at 382; see also Butnaru v.
Ford Motor Co., 84 S.W.3d 198,
204 (Tex.
2002); Minexa Ariz., Inc. v. Staubach,
667 S.W.2d 563, 567 (Tex. App.—Dallas 1984, no writ).  Money damages constitute satisfaction for
injury resulting from a breach, whereas an injunction decrees specific
performance, restraining any breach that would otherwise cause damage.  Eberts
v. Businesspeople Pers. Servs., Inc., 620 S.W.2d 861, 864 (Tex. Civ.
App.—Dallas 1981, no writ).  The two
remedies thus are exclusive of one another. 
Id.

Second, to order specific performance
of a contract via an injunction, present performance must be possible.  Canteen
Corp., 773 S.W.2d at 401.  A court
should not decree future contractual performance by requiring a party to
perform a continuous series of acts, extending through a long period of time,
over which the court exercises its supervision. 
Id.; see also Tex. & Pac. Ry. Co. v. City of Marshall, 136 U.S. 393, 407, 10 S. Ct. 846, 850
(1890); Am. Hous. Res., Inc. v. Slaughter,
597 S.W.2d 13, 15 (Tex. Civ. App.—Dallas 1980, writ ref’d n.r.e.).  Instead, absent a significant public
interest, parties to a private contract are left to their remedies at law.  Canteen
Corp., 773 S.W.2d at 401.

Here, the trial court’s injunction
seeks to enforce the future contractual rights of the parties, not to stop any current
breach of the agreements and enforce present performance.  Whether Waldroff can prove that he and AVGI
probably would have received future revenues from the agreements but for CytoGenix’s
breach—given their concession that such damages are speculative—is different
from whether their contractual injuries can be quantified by “pecuniary
standards.”  Under the terms of the
license agreements, Waldroff and AVGI are entitled to a monetary division of
revenues and royalties—i.e., the contemplated performance is pecuniary in
nature.  And, they sought money damages
from the jury for past breaches of the agreements.  We conclude that the agreements do not
support specific performance by injunctive enforcement because AVGI and
Waldroff did not show both that present performance is possible and that no adequate
remedy at law exists.[6]

Third, these agreements do not
contemplate enforcement of their terms by specific performance, or any sort of
injunctive relief, and lack the precision necessary to support specific
performance as a remedy.  To support
specific performance via injunctive relief, a contract must have precise terms
capable of enforcement.  Living Christ Church, Inc. v. Jones, 734 S.W.2d 417, 420–21 (Tex. App.—Dallas
1987, writ denied) (reversing judgment of specific performance where material
terms of settlement agreement were not precisely drawn); Guzman v. Acuna, 653
S.W.2d 315, 319 (Tex. App.—San Antonio 1983, writ dism’d) (holding that
agreement was not subject to specific performance because its essential terms
were uncertain and ambiguous).  Even if a
missing duration provision is not a material element of the contracts so as to
deny enforcement entirely, it nonetheless precludes specific performance by
permanent injunction.  Here, the contracts
do not provide that they are ones of perpetual duration, nor that they can be
enforced with specific performance or with an injunction, and the jury found,
to the contrary, that the contracts were not ones of perpetual duration.  Thus, the agreements do not support perpetual
injunctive enforcement.  See Jones, 734 S.W.2d at 420–21; Guzman, 653 S.W.2d at 319.

Finally, the permanent injunction
exceeds the scope of the original agreements. 
The trial court’s judgment orders CytoGenix to supply Waldroff with its
ssDNA vector within forty-five days of any written request, at its direct
laboratory expense plus twenty percent, and that Waldroff can obtain it from
third parties without interference from CytoGenix.  The injunction then orders something that is
not present in either license agreement: should CytoGenix fail to deliver the
ssDNA vector, it must provide technical documentation to third party providers
necessary to produce the ssDNA vector, subject to a reasonable confidentiality
agreement.  Leaving aside the matter that
the injunction orders a technology transfer never contemplated in the
agreements, by its very terms, the court’s order is not capable of present
performance: the parties agree that no ssDNA has ever been developed for a
species of shrimp or horse; Waldroff has never presented CytoGenix with the
shrimp or horse gene sequencing necessary to develop the corresponding ssDNA as
the agreement requires; and nothing in the agreements obligates either party to
do so by any date certain.  The
injunction thus does not seek to preserve the status quo or to prohibit a
present action contrary to the express terms of the contracts.  Rather, the injunction imposes an improper
contractual remedy because it contemplates “a continuous series of acts which
extend through a long period of time and require constant supervision by the
court.”  Canteen Corp., 773 S.W.2d at 401; cf. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (holding
that trial court has discretion to issue temporary injunction to preserve
status quo in breach of contract case if claimant demonstrates probable right
to recovery and irreparable injury before trial can be had to recover actual damages).

We hold that (1) the agreements do
not contemplate enforcement by specific performance via injunctive relief nor
are they specific enough in their terms to do so, (2) AVGI and Waldroff have
not shown that they lack an adequate remedy at law, and (3) specific
performance as a contractual remedy is unavailable because AVGI and Waldroff
made no showing that CytoGenix is capable of present performance of the
contract.  We therefore reverse the trial
court’s judgment ordering a permanent injunction.

III.  Attorney’s Fees

CytoGenix
requests that we reverse the attorney’s fees awarded to Waldroff and AVGI
because (1) Waldroff and AVGI did not specify in their pleadings the authority
under which attorney’s fees should be awarded; (2) the trial court awarded fees
under the Declaratory Judgments Act (the “DJA”), and Waldroff and AVGI are not
entitled to recover under the Act; and (3) attorney’s fees are improper in a
declaratory judgment action if the trial court awards no damages for a related
breach of contract claim.  In addition,
CytoGenix requests that we award attorney’s fees to it under the DJA, upon our
holding the licenses to be unenforceable. 
We review the trial court’s award of attorney’s fees under the DJA for
abuse of discretion.  Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985).  

Fees Awarded Pursuant to the Declaratory Judgments Act

A party cannot recover attorney’s
fees unless permitted by statute or contract. 
Holland v. Wal-Mart Stores, Inc., 1
S.W.3d 91, 94 (Tex.
1999).  This lawsuit is one for breach of
contract.  A party who prevails on a
breach of contract claim may recover its reasonable attorney’s fees pursuant to
section 38.001(8) of the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8) (Vernon 1997).  As the Texas Supreme Court has clarified,
however, section 38.001(8) requires that a party recover actual damages to be
entitled to an award of attorney’s fees. 
Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (“To
recover attorney’s fees under Section 38.001, a party must (1) prevail on a
cause of action for which attorney’s fees are recoverable, and (2) recover
damages.”); see also Mustang Pipeline Co.
v. Driver Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004) (per curiam)
(noting that even though claimant had valid claim, it “was not entitled to
recover attorney’s fees because it was not awarded damages on its breach of contract
claim”).  Because the jury did not award
actual damages to Waldroff and AVGI, they are not entitled to an award of
attorney’s fees under section 38.001(8).

AVGI and Waldroff maintain, however,
that the trial court properly awarded attorney’s fees to them pursuant to the
DJA.  They note, moreover, that although
the jury did not award any actual damages for breach of the license agreements,
the trial court nonetheless entered a permanent injunction enforcing the
agreements.  Thus, they contend, the trial
court had alternative bases for the attorney’s fees award.  As we have held that the trial court’s
permanent injunction ordering specific performance of the contracts is
improper, it cannot support an award of attorney’s fees.  

Further,
AVGI and Waldroff may not recover their fees based upon their claim for
declaratory relief.  Section 37.009 of
the Texas Civil Practice and Remedies Code allows a trial judge to award
attorney’s fees to a party proceeding under the DJA.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon
1997) (“In any proceeding under this chapter, the court may award costs and
reasonable and necessary attorney’s fees as are equitable and just.”).  

A party
may not, however, couple a declaratory plea with a damages action just to
recover attorney’s fees.  Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys.,
Inc., 796 S.W.2d 763, 772 (Tex.
App.—Dallas 1990, writ denied).  Thus, a
trial court abuses its discretion in awarding attorney’s fees under the DJA if
the claim for declaratory relief is brought solely for the purpose of obtaining
attorney’s fees.  Kenneth Leventhal & Co. v. Reeves, 978 S.W.2d 253, 258–59 (Tex.
App.—Houston [14th Dist.] 1998, no pet.) (holding that trial court abused its
discretion in awarding attorney’s fees under DJA when party received judgment
in his favor based on breach of contract and DJA, but no damages award).  Because Waldroff and AVGI did not recover any
actual damages, they “cannot now use declaratory relief, identical to [Waldroff’s]
breach of contract claim, to pave the way to recover attorney’s fees not
otherwise available.”  Id. at 259. 
Because we have concluded that the relief the judgment affords is not
supported by the agreements, we reverse the trial court’s award of attorney’s
fees to Waldroff and AVGI under the DJA.[7]

CytoGenix’s Claim for Attorney’s Fees

CytoGenix asks this court to award
attorney’s fees to it, in the amount the parties stipulated in the trial court,
should we reverse the trial court’s judgment. 
In its claim for declaratory relief, CytoGenix asked that the trial
court declare the license agreements to be unenforceable.  CytoGenix neither sought nor recovered any
actual damages from Waldroff or AVGI from the jury.  Thus, it is not entitled to its attorney’s
fees under section 38.001 based on the recovery of any actual damages.  See
Mustang Pipeline, 134 S.W.3d at
201; Solis, 951 S.W.2d at 390.

Rather, CytoGenix’s sole basis for
seeking a recovery of its attorney’s fees is its successful defense against
Waldroff and AVGI’s breach of contract claim. 
Section 38.001, however, does not provide for attorney’s fees for a
party’s successful defense against a breach of contract claim.  G.R.A.V.I.T.Y.
Enters., Inc. v. Reece Supply Co., 177
S.W.3d 537, 551 (Tex. App.—Dallas 2005, no
pet.); Wilson & Wilson Tax Servs. v.
Mohammed, 131 S.W.3d 231, 240 (Tex. App.—Houston
[14th Dist.] 2004, no pet.); Melson v.
Stemma Exploration & Prod. Co.,
801 S.W.2d 601, 604 (Tex.
App.—Dallas 1990, no writ).  CytoGenix’s
claim for declaratory relief is nothing more than a suit in avoidance of a
contract, and like Waldroff and AVGI, it did not recover any actual
damages.  Accordingly, we hold that it is
not entitled to the attorney’s fees it incurred in the prosecution or defense
of this suit.  See G.R.A.V.I.T.Y. Enters., 177 S.W.3d at 551; Mohammed, 131 S.W.3d at 240; Melson,
801 S.W.2d at 604.

 








CONCLUSION

We conclude that the trial court
erred in entering a permanent injunction that requires future specific performance
of the licensing agreements and in awarding attorney’s fees to Waldroff and
AVGI.  We further conclude that CytoGenix
is not entitled to its attorney’s fees upon reversal of the judgment against
it.  We therefore reverse the judgment of
the trial court and render judgment that the parties take nothing on their
claims.

 

                                                          Jane Bland

Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.











[1] We do not describe this technology with any scientific
expertise (nor, perhaps, any accuracy). 
The jury had the benefit of a power point presentation on the subject,
but it is not included in the reporter’s record of the trial other than by
description from a witness.

 





[2] At the time of trial, no other company had developed
the ssDNA product that CytoGenix sought to develop.  AVGI and Waldroff at one point forwarded a
bovine (cow) gene sequence of some type to CytoGenix.  No one testified, however, that it was
appropriate to use this sequence for either horses or shrimp, and none of the
parties testified that they pursued ssDNA research based on it.

 

 





[3] The parties to the agreement are CytoGenix’s
predecessor-in-interest, Cryogenic Solutions, Inc., and Waldroff.  For ease of reference, we use “CytoGenix” to
refer to both it and its predecessor entity. 
Skillern executed the agreement on CytoGenix’s behalf, in his capacity
of president of the company.

 





[4] See also First Commodity
Traders, Inc. v. Heinold Commodities,
Inc., 766 F.2d 1007, 1012 (7th Cir. 1985) (“When no termination date
is specified in a contract, courts must look to surrounding circumstances to
discover the intention of the parties.”); Neb. Nutrients, Inc. v. Shepherd, 626
N.W.2d 472, 499 (Neb. 2001) (“[A] contract is not subject to the objection that
it is indefinite so long as the parties can tell when it has been performed,
and it is enough if, when that time arrives, there is in existence some
standard by which performance can be tested.”) (internal quotation omitted); Hampton
Tree Farms, Inc. v. Jewett,
892 P.2d 683, 692 (Or. 1995) (“[T]he absence of an explicit term
regarding the time period of a contract is not necessarily fatal.”); First Nat’l Bank of Bluefield v. Clark,
447 S.E.2d 558, 562 (W. Va. 1994) (“[T]he failure of the parties to fix a time
or definite time for performance does not normally defeat a contract.  Instead, . . . the law usually implies that
performance shall be within a reasonable time.”).





[5] For the same reason, we do not address CytoGenix’s
complaints concerning the trial court’s jury instructions, conflicting jury findings,
and unconscionability.

 

 





[6] We further note that the trial court’s permanent
injunction cannot be based on any protection of patent rights, for nothing in
the agreements identifies a patent or otherwise purports to convey contractual
rights to a patent.  Rather, the
injunction requires performance of agreements that do not identify any specific
intellectual property and do not require that the parties develop such
property—the agreements instead assume
that commercial use shrimp and horse ssDNA can and will be developed, and that
Waldroff will provide the necessary gene sequences to accomplish this end.  Moreover, AVGI and Waldroff did not maintain
at trial that CytoGenix had interfered, or threatened to interfere, with any
rights granted to Waldroff in the licensing agreements or to AVGI in the
sublicenses.





[7] AVGI did not seek actual damages under the license
agreements, nor did it present evidence of irreparable injury or actual damages
distinct from Waldroff.  Because the only
relief AVGI sought was through Waldroff’s rights under the agreements, we
conclude that AVGI has not demonstrated any independent ground for recovery of
its attorney’s fees.