## J. W. MOORE v. C. E. DILWORTH.

No. 8178.  Decided January 26, 1944.
Rehearing overruled March 22, 1944.
Second rehearing overruled May 17, 1944.
(179 S. W., 2d Series, 940.)

*J. W. Ragsdals,* of Victoria, and *O. F. Burney,* of Floresville, for petitioner.

It was error for the Court of Civil Appeals to hold that the evidence was insufficient to establish a definite promise to pay made after the discharge in bankruptcy. 8 C. J. S. 1572. 6 Am. Jur. 833, note 9; 75 A. L. R. 582.

On the question of limitation. Gay v. Crew, 111 S. W. (2d) 782; 28 Texas Jur. 298-302; Santa Fe Grain Co. v. Minneapolis Moline Power and Imp. Co., 86 S. W. (2d) 835.

*DeWitt Murray,* of Floresville, *Coleman Gay,* of Austin, and *Miller & Miller,* of Gonzales, for respoondent.

The most that can be said of petitioner's testimony, in his effort to prove a "clear, distinct, and unequivocal promise to pay the debt," was to show a promise made shortly after the discharge of bankruptcy to pay the discharged debt, and that in subsequent conversation respondent "never denied" that he would pay the debt, and therefore petitioner failed to show a sufficient new promise, and the court of civil appeals correctly held that there was insufficient evidence to establish a definite promise to pay. Neblett v. Armstrong, 26 S. W. (2d) 166, 75 A. L. R. 577; Meek v. Roberts, 75 Fed. (2d) 382; Cotulla v. Urbahn, 104 Texas 208, 135 S. W. 1159, 34 L. R. A. N. S. 345.

Mr Justice Critz delivered the opinion of the Court.

On January 17, 1938, John W. Moore sued C. E. Dilworth on a promissary note in the principal sum of $22,500.00, executed by Dilworth and payable to Moore. Such note bears date January 18, 1931, and was due three years after date. Dilworth answered, and pleaded as a defense to this note his discharge in bankruptcy. Moore then filed an amended petition, in which he alleged that he did not file his note as a claim in the Dilworth bankruptcy proceeding because Dilworth, while such proceedings were pending, and before he was discharged, promised him, Moore, that if he, Moore, would not file such note as a claim in the bankruptcy proceedings, he, Dilworth, would pay same. Also, Moore pleaded that after Dilworth was discharged in bankruptcy he often, in the years 1935, 1936, and 1937, promised that he would pay the note. Dilworth replied to Moore's pleadings, and again pleaded his discharge in bankruptcy and pleaded the two year statute of limitation. Trial in the district court resulted in a judgment for Moore. This judgment was reversed by the San Antonio Court of Civil Appeals and judgment rendered for Dilworth. 173 S. W. 2d 191. Moore brings error.

We are in accord with the holding of the Court of Civil Appeals to the effect that any cause of action Moore may have had against Dilworth on Dilworth's promise to pay this note, made prior to Dilworth's discharge in bankruptcy, was barred by the two year statute of limitation at the time this suit was filed. In this connection, this record shows that Dilworth's discharge occurred on April 13, 1934, and this suit was originally filed on January 17, 1938.

The only evidence contained in this record touching any promise by Dilworth to pay this note, made after bankruptcy, is contained in the testimony given by Moore. He testified that on several different occasions, between the time when Dilworth was discharged in bankruptcy, which was April 13, 1934, and the time when Dilworth sold his home, which was in 1938, Dilworth orally told him that he would pay this note. When Moore was pressed to give the time, or times, when these promises were made, he absolutely failed to even indicate any particular year. In regard to this matter we quote as follows from the Q. and A. transcript of his evidence:

"Q. Well, can you state what years you asked him about it?
A Oh, I don't know. I couldn't state what years, but it was often I asked him what he was going to do, if he couldn't do something.

Q  Well, do you know whether you had a conversation with him in 1935?

A  I may have, I don't know.

Q  Do you know whether he made you a promise in 1935 that he would pay you this note?

A  If I did what?

Q  You say that you don't know whether or not you had a conversation with him in 1935 regarding this note that you claim he owed you.

A  I don't know, I might have.

Q  Do you know whether or not you had a conversation with him in 1936 regarding the note?

A  I might have too.

Q  You are not stating positively you did or didn't?

A  No, because I had asked him a number of times during that time.

Q  You don't know whether or not you had a conversation with him in 1937 unless that was the year he sold his home?

A  I know I had it with him when he sells his home. I know my wife tried to talk to him once or twice and couldn't do it.

Q  And couldn't do it?

A  No, sir.

Q  So the only two times that you are certain when you had a conversation with him was when he was discharged in bankruptcy and when he sold his home, is that it?

A  Yes. I have had a number of them with him. I don't know what time, what years it was, but during that period I did."

The evidence in this case shows that Dilworth sold his home in 1938. In regard to what occurred between Moore and Dilworth after Dilworth sold his home, we quote as follows from Moore's testimony in the Q. and A. statement of facts:

"Q  More particularly, do you know whether or not he owned a home?

A  Yes, sir.

Q  All right, do you know whether he owns it now or not?

A  Beg pardon?

Q  Does he own that home now?

A  No, sir, no, sir.

Q  What became of it?

A  He sells it.

Q  Do you remember when he sold it?

A  I think it was in 1938.

Q  1938?

A  1938 that he sold it.

Q  After he had sold his home state whether or not you

then had another conversation with him about this note.

A   Yes, sir.

Q   Just tell the jury what that was.

A   I immediately goes to see him after he sells his home He gets $15,000.00 cash for it.  I wasn't at home, and I come back.  I was gone for a week or something.  I understood that he had sold that home and that he got $15,000.00 cash. I goes to him and asked him, and I told him 'Now, look here, I need some money; a little money would do me. A little money would do me some good now.' He said 'I am broke. I can't do anything, and this is my wife's money. I can't pay you.'

Q   Go on and tell the entire conversation.

A   Well, I said 'You promised to pay this thing. I could have had my money all the time, but I protected you and now you refuse to pay me. You have this money and you refuse to pay me anything.' He said 'Well, I can't help it. It is my wife's.' Well, I said 'That is funny. I have heard you make the remark criticizing men that hide behind their wife's coattails,' and I said 'I am going to try to get my money. I am going to sue you,' and he walked off and leaves me."

■  The opinion of the Court of Civil Appeals in substance holds that Moore's testimony is insufficient in law to establish a legally enforcible promise on the part of Dilworth to pay this note, made after Dilworth's discharge in bankruptcy.  We are in accord with this holding.  When we come to examine Moore's testimony, we find that he absolutely fails to fix any time, or approximate time, when Dilworth made any promise or promises to pay this note.  Under Moore's testimony such promise or promises could have been made at any time during some three or four years.  Moore has no legal claim against Dilworth unless Dilworth made a legally enforcible contract to pay this obligation after he was discharged in bankruptcy. The burden was on Moore to prove such a contract.  Certainly no legally enforcible contract was proved unless there is evidence in this record showing when the obligation to pay matured or could be enforced.  Generally, where no time of performance is stated in a contract, the law will imply a reasonable time.  Hart v. Bullion, 48 Texas 278; Check v. Metzer, 116 Texas 356, 291 S. W. 860.  Also, it is the general rule that a contract to pay money, which does not specify a date of payment, is enforcible as soon as the contract is made.  12 Amer. Jur., p. 559, 304.  It is essential to the validity of a contract that it be sufficiently certain to define the nature and extent of its obligations. If an agreement is so indefinite as to make it impossible for a court to fix the legal liability of the parties thereto, it cannot con-

stitute an enforcible contract. So where a contract does not in some way specify its duration or time of performance, it is not enforcible. 17 C. J. S., p. 364, 365. Certainly the above rule would require a contract to be sufficiently definite for a court to be able to fix the time when it can be enforced. In this case Moore's testimony fails utterly to meet this test; and this is true whether it be held that Dilworth's promise obligated him to pay immediately or within a reasonable time. If Dilworth obligated himself to pay immediately, that time cannot be ascertained unless the time when the obligation was entered into can be ascertained. Likewise, if Dilworth obligated himself to pay within a reasonable time, that time cannot be ascertained unless the time when the obligation was entered into can be ascertained.

The judgment of the Court of Civil Appeals, which reverses the judgment of the district court and renders judgment for Dilworth, is affirmed.

Opinion delivered January 26, 1944.

---

## On Motion For Hearing

Onr original opinion in this case was delivered on January 26, 1944. We refer to that opinion for a full statement of the facts and issues involved. The case is now before us on motion for rehearing, filed by petitioner, J. W. Moore.

In his motion for rehearing in this Court, in written argument in support thereof, Moore contends that we erred in the several rulings contained in our original opinion. We have read and carefully considered the motion and written argument touching such matters, and still adhere to our original rulings.

■ ■ In his motion for rehearing in this Court, and written argument in support thereof, Moore contends that the Court of Civil Appeals should have remanded this case to the district court for a new trial, after reversing the judgment of that court, instead of rendering judgment for Dilworth, as was done. This contention was not made in any assignment of error contained in the motion for rehearing filed in the Court of Civil Appeals. Also, it was not made in any Point of Error contained in the application for writ of error to this Court. A Point of Error in this Court not set out as an assignment of error in the motion for rehearing in the Court of Civil Appeals will not be considered by the Supreme Court. Rule 458, Texas

Rules of Civil Procedure; Glenn v. McCarty, 130 Texas 641, 107 S. W. 2d 363, 110 S. W. 2d 1148; Stephenson v. Miller-Link Lumber Co. (Com. App.), 277 S. W. 1039; Grayce Oil Co. v. Peterson, 128 Texas 558, 98 S. W. 2d 781. Also, a Point of Error not contained in the application for writ of error will not be considered by this Court. Rule 469, Texas Rules of Civil Procedure; Texas & P. Ry. Co. v. Perkins (Com. App.), 48 S. W. 2d 249; Shell Petroleum Corporation v. Grays, 131 Texas 515, 114 S. W. 2d 869. It would serve no purpose in this instance to permit the application for the writ to be amended under Rule 504, because the point was not assigned as error in the motion for rehearing in the Court of Civil Appeals.

The motion for rehearing filed herein by J. W. Moore is in all things overruled.

Opinion delivered March 22, 1944.

Second motion for rehearing overruled May 17, 1944.