**John J. TERRELL, Appellant,**

v.

**NELSON PUETT MORTGAGE COMPANY, Appellee.**

**No. 12146.**

Court of Civil Appeals of Texas, Austin.

June 19, 1974.

Rehearing Denied July 10, 1974.

Jack N. Price, Price, Fisher, Hill, Patton & McLemore, Longview, for appellant.

Douglass D. Hearne, Stayton, Maloney, Hearne, Babb & Cowden, Austin, for appellee.

SHANNON, Justice.

Appellee, Nelson Puett Mortgage Company, a corporation, sued appellant, John J. Terrell, for breach of contract. Terrell filed a cross-action also alleging damages for breach of contract. Upon trial to a jury, a judgment that both appellee and Terrell take nothing was entered. We will affirm that judgment.

In 1962, Terrell operated a business which computed, published, and sold a highway mileage guide for points within Texas. Terrell desired to enlarge that publication into a national mileage guide, and for that expansion he needed additional capital.

Terrell approached Nelson Puett, appellee's president, and asked him to participate in the expansion of the mileage guide business and to supply the needed additional capital. Puett declined to participate in the business but instead suggested that appellee would be interested, for a price, in supplying Terrell with "credit underwriting." Such an arrangement was satisfactory with Terrell, and he and appellee entered into an agreement which was reduced to writing and signed in September of 1962.

By the terms of that agreement appellee promised to furnish "credit underwriting service" to Terrell for the construction and development of computing machines necessary to calculate the national mileage guides. In exchange, Terrell promised to pay appellee the sum of $252.15 each month for six years. It should be noticed that the parties did not agree upon any sum which appellee was to underwrite.

To effectuate its "credit underwriting service," appellee had an arrangement with the Capital National Bank whereby the bank would lend money to the borrower and take the borrower's note. Appellee's practice was not to cosign the note, but instead appellee would agree with the bank that if the borrower did not repay the bank, and if after reasonable collection ef-

forts, it was necessary for the bank to take judgment, appellee would purchase that judgment for its face amount together with interest.

In September of 1962, appellee arranged with the Capital National Bank to lend Terrell up to $30,000. Upon authorization by Puett the bank released the money to Terrell as needed by him. The loan was for a two-year period, and Terrell timely repaid the bank.

For reasons not important to relate, the national mileage guide business did not prosper. Terrell testified that in April of 1966, he made arrangements with the City National Bank for a loan of $14,000 to attempt to continue the development of his national mileage guide business. He wrote Puett calling upon appellee to furnish for that loan the "credit underwriting service" agreed upon in the written contract. Puett did not reply to Terrell's letter and Terrell did not obtain the loan. Terrell, thereafter, stopped making the monthly payments of $252.15 to appellee.

Appellee sued Terrell for $9,154.72 which sum represented the balance of the monthly payments under the agreement. Terrell answered and filed a cross-action. Terrell alleged, among other things, that appellee breached the agreement by failing to furnish credit underwriting services for a six-year period, and that, as a result, he was under no further obligation to make monthly payments, and was entitled to restitution of some $9,000 that he had paid appellee. In his cross-action, Terrell also alleged that because of appellee's breach, he had been damaged in the sum of $8,833.55.

Before commencement of trial and pursuant to Texas Rules of Civil Procedure, rule 266, Terrell filed an admission that appellee was entitled to recover as stated in its petition, except insofar as it might be defeated by the allegations of his answer and cross-action.

At trial, Terrell testified that before the written agreement was signed, Puett orally agreed that he would furnish Terrell credit underwriting for six years. Terrell also testified that he indicated to Puett that he would need sums in addition to the $30,000 loan from the Capital National Bank. As we understand his testimony, however, Terrell did not claim that he told Puett of any definite sum that he would need. Puett claimed, on the contrary, that the intendment of the agreement was that appellee would underwrite only one loan, and that the entire credit underwriting service fee was earned when appellee arranged for the $30,000 loan from the Capital National Bank to Terrell.

The answers of the jury to the special issues were as follows:

(1) that Puett and Terrell reached an agreement in September of 1962 by which appellee was to underwrite a continuing line of credit for Terrell for a period of six years;

(2) that prior to the written agreement of September, 1962, between Terrell and appellee, Puett represented to Terrell that he would furnish him a continuing line of credit for six years;

(3) that Terrell relied upon that representation in entering into the written agreement;

(4) that at the time of the written agreement Terrell believed that Puett would furnish underwriting for a continuing line of credit for a period of six years; the jury failed to find that Puett knew that Terrell had such belief; and

(5) that the reasonable value of the underwriting services furnished by appellee to Terrell in connection with the $30,000 loan by the Capital National Bank to Terrell was $3,000.

Both Terrell and appellee filed motions for judgment. The trial court, however, entered judgment providing that neither Terrell nor appellee recover.

█ Terrell attacks the judgment by nine points of error claiming, primarily,

that the jury's answers to the special issues were supported by evidence, and that, accordingly, he was entitled to an affirmative judgment for a sum representing the difference between $3,000, as the sum found by the jury to be the value of the credit underwriting service, and the total sum paid by him to appellee. By a cross-point appellee claims that the court erred in failing to enter judgment for it in the sum due under the written agreement. We are of the opinion that the trial court was correct in denying relief to both appellee and appellant for the reason that their agreement was too indefinite to be enforced.

As we analyze the testimony and the jury's answers to the pertinent special issues, the parties' agreement was an attempted bilateral contract. The jury determined that Puett promised to furnish credit underwriting to Terrell for six years. In exchange, Terrell promised to pay appellee $252.15 each month for that period of time. Although Terrell's obligation under his promise was perfectly definite, we are of the opinion that appellee's obligation was not. The vice in appellee's promise was that it did not specify any sum which appellee agreed to underwrite within the six-year period.

■ One requirement of a legally binding promise is that it be sufficiently definite in its terms to enable the court to understand what the promisor undertook. Moore v. Dilworth, 142 Tex. 538, 179 S. W.2d 940 (1944), Bendalin v. Delgado, 406 S.W.2d 897 (Tex.1966). A lack of definiteness in an agreement may concern various elements, among others, as the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred.

■ There are cases wherein the parties have done everything else necessary to make a binding agreement for the sale of goods or services, yet have failed to speci-fy the price. In those cases, the failure to specify the price does not leave the agreement so incomplete or indefinite that it cannot be enforced since it is presumed that a reasonable price was intended. Bendalin v. Delgado, *supra*. However, in the case, as here, in which the consideration for which the price is to be paid is left indefinite, it is usually not possible to invoke the standard of reasonableness in order to give the promise sufficient definiteness to make it enforceable. 1 Williston on Contracts, § 42 (3rd Ed. 1957).

The promise in the case at bar lacks definiteness of an essential element, the total sum to be underwritten, which renders the agreement unenforceable. By its promise, appellee could have taken the position, and did so, that a comparatively modest sum was all that was required to be underwritten by it, whereas Terrell could have insisted, and did so, that additional sums were supposed to be underwritten. The jury's answer that the agreement was for appellee to underwrite a continuing line of credit for a period of six years did not render appellee's promise any more definite with respect to appellee's financial obligation.

The circumstances surrounding the establishment of the national mileage guide were not such so as to indicate any approximate financial scope of appellee's promise to furnish credit underwriting for six years. The creation of the national mileage guide was a new endeavor for Terrell, and he was unaware of its financial requirements and what amounts would be sufficient to carry that project to completion. Appellee and its president, Puett, were not knowledgeable with respect to what those requirements might be. For these reasons, we are of the opinion that Morgan v. Young, 203 S.W.2d 837 (Tex. Civ.App.1947, writ ref'd n. r. e.) is not controlling.

The judgment is affirmed.