Opinion issued May 24, 2007









 

Opinion issued May 24,
2007

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00488-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



BURL ATCHISON, Appellant

 

V.

 

SPAWMAXWELL COMPANY, L.P., STEVE KEFFELER, AND FRED
MAXWELL, Appellees

 

 



On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 2005-01740








 

 



MEMORANDUM OPINION

 

Burl Atchison appeals a no-evidence
summary judgment entered in favor of his former employer and supervisors,
SpawMaxwell Company, L.P., Steve Keffeler, and Fred Maxwell (collectively,
“SpawMaxwell”) on his claims for breach of contract and defamation.  Atchison contends that the trial court erred in granting summary judgment on his breach of
contract and defamation claims because he raised fact issues precluding summary
judgment.  Atchison further contends, with respect to the defamation claim,
that the trial court used an incorrect legal standard.  We conclude that the trial court properly granted summary judgment.  We
therefore affirm.

Background

SpawMaxwell, a construction company, employed Atchison as a project director for construction projects it performed for The Methodist
Hospital.  In January 2004, due to a reduction in its workforce, SpawMaxwell
fired Atchison, and the events leading to this lawsuit occurred.  In his
petition, Atchison alleges that shortly after his termination, unspecified
SpawMaxwell personnel questioned him about a cook top that he had ordered but
could not be found.  In addition, Atchison alleges that SpawMaxwell accused him
of using improper means to expedite the issuance of building permits.  

Atchison further alleges, “after being accused by SpawMaxwell personnel of
theft, Mr. Atchison agreed to undergo a rigorous polygraph test if, upon his
successful completion of that test, SpawMaxwell would provide Mr. Atchison with
a written letter of apology and a public apology to SpawMaxwell employees.” 
Atchison claims that he “successfully underwent” two polygraph examinations
that indicated that he had not stolen a cook top or used improper means to
secure building permits.  At that point, he asked Fred Maxwell (“Fred”) for a
letter of apology.  Maxwell refused to provide one.  Atchison also contends
that SpawMaxwell employees “disparaged” Atchison to personnel at The Methodist
Hospital.

          Atchison sued SpawMaxwell for breach
of contract, defamation, and tortious interference with contract.[1]  SpawMaxwell moved for a no-evidence summary
judgment, challenging every element of Atchison’s breach of contract and
defamation claims.  Atchison responded, contending that fact issues exist on
his breach of contract and defamation claims.  In support of his response, he
offered his own affidavit.  He later filed a supplemental affidavit.

          In his first affidavit, Atchison avers that, 

[a]round the time of my termination, I was questioned by SpawMaxwell
personnel regarding a “cook top” . . . .  After I was accused of theft by SpawMaxwell
personnel (specifically, Fred Maxwell, Steve Keffeler and Ann Olson), I agreed
to undergo a rigorous polygraph examination if, upon my successful completion
of that test indicating that I did not have any involvement in the
disappearance of the cook top, SpawMaxwell, and specifically Fred Maxwell on
his own behalf and on behalf of SpawMaxwell, would agree to provide me with a
written letter of apology and a public apology to SpawMaxwell employees.

 

He further avers that, after he “successfully
underwent two polygraph examinations,” Fred informed him that he “would not be
receiving such a letter from him or anyone else at SpawMaxwell.”   

          The supplemental affidavit is similar
to the first, except that Atchison attached transcripts of three telephone
conversations he had with Fred.[2]  The first conversation, which took place on
February 3, 2004, is a discussion in which Atchison asks Fred, “I was calling
you to see when I can get my letter of apology.”  Fred responds, “Well, I was
going to do something publicly tomorrow, so I guess we can do that, give it to
you after that.” 

The transcript for the second conversation is
undated.  In the second conversation, Fred states, “Wanted to let you know that
I did make the announcement yesterday morning at the breakfast meeting.”  Atchison responds, “Okay, uh, announcement?”  Fred replies, “Right.  About what happened
and you doing the polygraph and all that.”  Atchison then asks, “I thought we
had agreed on an apology.”  Fred answers, “Well call it what you want, that’s
what I did.”  Fred then asks, “Is there something wrong with that?”  The
following colloquy then occurred:

[Atchison:] Well no.  It’s just that I thought we had agreed on a
public apology and a written apology.

 

[Fred:] Yeah

 

[Atchison:] And since I passed the polygraph, I mean, that’s—nevertheless,

 

[Fred:] Yeah, well, I say.  Yeah, I don’t know, technicalities,
whatever it is,

 

[Atchison:] Well no, I mean, it’s doing the right thing.  You
know, something that you always preached.  And I think that you and I both know
the difference between what you’re saying and an announcement and an apology.

 

[Fred:] Well, I am doing what—you know what you’re calling it by.

 

[Atchison:] You are doing what you are probably being advised to
do.  Fred, I’ve never, I haven’t been trying to make any legal issue out of
this.  It was just a man-to-man agreement between me and you.

 

Later in the conversation, Atchison acknowledges, “I mean, I didn’t know how you were going to go about a public
apology.  You said you had to figure out how you were going to do it, and after
you said that, I was thinking well, that does have to be figured out, how you
do something like that, so, anyway.”  Fred then informs Atchison that, on the
advice of counsel, he would not provide him with a separate written apology in
addition to the one he gave at the morning meeting.  Atchison responds, “[i]f I
had hired counsel, he would have probably told me no way, you know, to take a
polygraph, you know.  But I was willing to do that because we had a gentleman’s
agreement that we agreed upon.”  

          In the third conversation, also
undated, Atchison recounts his experience with the polygraph examiner and
discusses possible explanations for the missing cook top, together with the
themes he discusses in the other two conversations.

No-Evidence Summary Judgment

Standard of Review

A party moving for a no-evidence
summary judgment asserts that, after adequate time for
discovery, no evidence exists as to one or more essential elements of a claim
or defense on which the non-movant has the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  Summary
judgment is precluded if the non-movant then produces more than a scintilla of
evidence raising a fact issue on the challenged elements.  See id.;
Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003).  More than a scintilla of evidence exists if the evidence would allow reasonable and
fair-minded people to differ in their conclusions.  Forbes, 124 S.W.3d
at 172.  Less than a scintilla of evidence exists when the evidence is
so weak as to do no more than create a mere surmise or
suspicion of a fact.  Id.  We take as true all evidence favorable to the
non-movant, indulging every reasonable inference and resolving any doubts in
the non-movant’s favor.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
751 (Tex. 2003).  When, as here, a summary judgment does
not specify the grounds on which it was granted, we will affirm the judgment if
any one of the theories advanced in the motion is meritorious.  Joe v. Two
Thirty Nine Joint Venture, 145 S .W.3d 150, 157 (Tex. 2004).

Breach of Contract

To prevail on a breach of
contract claim, a party must prove:
(1) a valid contract existed, (2) the plaintiff performed
or tendered performance, (3) the defendant breached the contract, and (4) the
plaintiff was damaged as a result of the breach.  Frost Nat’l Bank v. Burge,
29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Valero Mktg. & Supply
Co. v. Kalama Int’l,
51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Atchison asserts that SpawMaxwell breached its agreement with him by failing to tender a
written apology.

At the outset,
SpawMaxwell contends that no legally enforceable agreement exists.  To be
legally binding, a contract must be sufficiently definite in its terms.  See
T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).  The rules regarding indefiniteness of material terms of a contract are based
on the concept that a party cannot accept an offer and form a contract unless
the terms of that contract are reasonably certain.  Fort Worth Indep. Sch.
Dist. v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000).  If an
agreement is so indefinite that a court cannot determine the legal obligations
and liabilities of the parties, it is not an enforceable agreement.  Moore
v. Dilworth, 142 Tex. 538, 542–43,
179 S.W.2d 940, 942 (1944); Cytogenix, Inc. v. Waldroff, 213
S.W.3d 479, 485 (Tex.
App.—Houston [1st Dist.] 2006, no pet.).

Atchison does not contest Fred’s statement in their second phone
conversation that, in the meeting that took place, “I told everybody that I was
sorry that it happened.”  On appeal, Atchison claims that SpawMaxwell
breached its agreement when Fred failed to produce a written apology after the
meeting. He notes that, in his after-the-fact phone conversations
with Fred, Fred does not take issue with Atchison when Atchison characterizes
the agreement to be one that required both a written and a verbal apology.  In their conversations, however, Atchison admits to Fred: “I mean, I didn’t know how you were going to go
about a public apology.  You said you had to figure out how you were going to
do it, and after you said that, I was thinking well, that does have to be
figured out, how you do something like that, so, anyway.”  Atchison
further characterizes the agreement as a “gentleman’s agreement.”[3]

Here, Atchison acknowledged
that, at the time he entered the agreement, the form of the public apology was
something that “[had] to be figured out.”  We hold that the same
is true for any written apology.  Absent reasonably certain terms as to the
scope and terms of an apology, we hold that Fred’s oral promise to Atchison is not definite enough to establish the meeting of the minds that is necessary to create
a legally enforceable contract.  See Fort Worth, 22 S.W.3d at 847; Fin.
Review Servs., Inc. v. Prudential Ins. Co. of Am., 50 S.W.3d 495, 511 (Tex. App.—Houston [14th Dist.]) (upholding directed verdict on contract claim where oral
promise that outcome of audit would govern other outstanding charges was too
indefinite to fix legal obligations and liabilities of  parties), aff’d,
29 S.W.3d 74 (Tex. 2000); Gannon v. Baker, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (on remand) (“the terms of an oral
contract must be clear, certain, and definite,” including “the time of
performance” and “the service to be rendered”). The trial court therefore
properly granted summary judgment on Atchison’s breach of contract claim.

Defamation

Slander is an
oral defamatory statement; libel is a written defamatory statement.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 73.001 (Vernon 2005); Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995); Dolcefino v. Randolph, 19 S.W.3d 906, 917 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). 
A defamatory statement is one that tends to injure a person’s
reputation and thereby expose the person to public hatred, contempt, ridicule,
or financial injury.  See Tex.
Civ. Prac. & Rem. Code Ann. § 73.001 (libel); Johnson,
891 S.W.2d at 646; Einhorn v. LaChance, 823 S.W.2d 405,
410–11 (Tex. App.—Houston [1st Dist.] 1992, writ dism’d w.o.j.).  Defamation is
actionable per se if it injures a person in his office, business, profession,
or occupation.  Knox v. Taylor, 992
S.W.2d 40, 50 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  A
false statement that charges a person with the commission of a crime is
libelous per se.  Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d
369, 374 (Tex. 1984); Bradbury v. Scott, 788 S.W.2d 31, 38–39 (Tex.
App.—Houston [1st Dist.] 1989, writ denied) (holding that to charge employee
with dishonesty in his dealings with his employer is defamatory per se because
it falls within general classification of words that affect person injuriously
in his profession or occupation).  Publication to third parties is an essential
element of a defamation claim.  See WFAA-TV, Inc. v. McLemore, 978
S.W.2d 568, 571 (Tex. 1998). 

With regard to the
publication element, Atchison avers, 

I have been informed by various people
that SpawMaxwell personnel, including but not limited to Steve Keffeler and
Fred Maxwell, continued to make disparaging remarks and to accuse me of the
theft of the cook top, even after the successful polygraph examinations.  I was
informed by both SpawMaxwell employees, as well as employees of The Methodist
Hospital System that such disparaging remarks had been made.  

 

He further avers that he
has recorded conversations with a hospital employee in which the employee
states that the hospital was not in a position to give construction work to Atchison’s new employer “due to the accusations of theft made against me.”  Atchison, however, does not offer the tape or any specifics of this conversation, nor any other
evidence of a specific defamatory statement made by SpawMaxwell to a third
party.

Affidavits containing
conclusory statements unsupported by facts are not competent summary judgment
evidence.  Brownlee v. Brownlee,
665 S.W.2d 111, 112 (Tex. 1984); Prime Prods., Inc. v.
S.S.I. Plastics, Inc., 97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied); Skelton v. Comm’n for Lawyer Discipline, 56 S.W.3d
687, 692 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Affidavits supporting
or opposing a motion for summary judgment must be factual.  Prime Prods.,
Inc., 97 S.W.3d at 637.  The summary judgment affidavits in this case do
not raise an issue of fact regarding the publication of a defamatory statement. 
 Atchison presented no evidence that SpawMaxwell spoke with, or wrote to,
anyone at The Methodist Hospital (or any other third party) about the cook top
investigation.  Atchison’s affidavits discuss statements that SpawMaxwell
employees made to him, but he fails to identify any specific statement
that he contends is defamatory, who specifically made the statement, and to
whom (other than himself) such a statement was made.  He thus has failed to
present competent, admissible evidence that SpawMaxwell published defamatory
statements to third parties.  See Ledig v. Duke Energy Corp.,
193 S.W.3d 167, 180–81 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (holding that trial court properly
granted defendant’s summary judgment on plaintiff’s defamation claim because
there was no evidence of publication of statement referring to plaintiff); Bergman
v. Oshman’s Sporting Goods, Inc., 594 S.W.2d 814,
817 (Tex. Civ. App.—Tyler 1980, no writ) (same).  The trial court therefore
properly granted summary judgment on Atchison’s defamation claim.[4]

Conclusion

          We hold that the trial court (1)
properly granted summary judgment on Atchison’s breach of contract claim
because Atchison failed to raise a genuine issue of material fact as to the
existence of an enforceable contract and (2) properly granted summary judgment
on Atchison’s defamation claim because Atchison failed to raise a genuine issue
of material fact with regard to the element of publication.  Accordingly, we
affirm the summary judgment of the trial court.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Nuchia, Jennings and Bland.









[1] Atchison does not appeal the trial court’s summary
judgment on his tortious interference with contract claim.

 





[2] SpawMaxwell objected to the statements in the
transcripts as hearsay in the trial court but did not obtain a ruling on its
objections.  In addition, it contended that many of the statements in the
affidavits are conclusory.  In our court, the hearsay objections are waived for
failure to obtain a ruling (even though an implied ruling sustaining the
objections would support the summary judgment).  Delfino v. Perry Homes, No. 01-05-00965-CV, 2006 WL 2042527, at *2–3 (Tex. App.—Houston [1st
Dist.] July 20, 2006, no pet. h.).  The conclusory objections are not.  See
McIntyre v. Ramirez, 109 S.W.3d 741, 749-50 (Tex. 2003) (conclusory
statement of fact by expert); Purcell v. Bellinger, 940 S.W.2d 599, 602
(Tex. 1997) (conclusory statement of fact by lay witness); Anderson v.
Snider, 808 S.W.2d 54, 55 (Tex. 1991) (conclusory statement of law).





[3] A “gentlemen’s agreement” is “an unwritten agreement that,
while not legally enforceable, is secured by the good faith and honor of the
parties.”  Black’s Law Dictionary 708 (8th
ed. 1999).  





[4] In his third issue, Atchison contends that the trial
court erred in applying a negligence standard to his slander claim, rather than
imposing strict liability.  As we conclude that the summary judgment evidence
fails to raise a fact issue as to publication, we need not address Atchison’s third issue.