

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00304-CV

CHRISTOPHER HALL, APPELLANT

V.

GERMANIA FARM MUTUAL INSURANCE ASSOCIATION, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 102599-B, Honorable John B. Board, Presiding

October 13, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This appeal involves property insurance, damage to the insured's property, the insurer's attempt to adjust the claim, a dispute regarding the quantum of loss derived by the adjuster, a lawsuit filed by the insured against the insurer, an appraisal clause, the invocation of the appraisal clause by the insurer once suit was filed, an eventual appraisal, the purported tender of the appraised loss by the insurer, the doctrine of estoppel, and the question of whether any extra-contractual claims of the insured survived tender of the appraised amount.

The dispute comes to us in the setting of a final summary judgment. The insurer, Germania Farm Mutual Insurance Association, filed a traditional motion for such relief. It believed that payment of the appraised loss erected an insurmountable obstacle to the insured's recovery on not only his breach of contract claims but also his extra-contractual statutory and common law tort claims. The trial court agreed and granted the motion. The insured, Christopher Hall, appealed and contended through three issues that granting the motion was error.

One may wonder if the factual circumstances before us comport with those contemplated by our Texas Supreme Court in recognizing the legitimacy of insurers' decisions to include appraisal clauses in their policies. Though agreeing to purchase an insurance policy containing one may have been an "'injudicious'" decision, according to our Supreme Court, the high court nevertheless deemed them enforceable. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009), *quoting Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630 (Tex. 1888). Apparently, they were to serve the purpose of avoiding the expense of litigation. *See id.* at 894 (stating that "[a]ppraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it."). And, to achieve that end, completing the appraisal process was "intended to take place before suit [was] filed" and be a "condition precedent to suit." *Id.* Despite the existence of an appraisal clause in the policy at bar, no one invoked its terms before suit. Instead, more than two years from the time of loss and one year from the date of suit lapsed before Germania moved the trial court to compel appraisal.

2

Counsel for Hall asserted, at oral argument, that insureds have little incentive to seek appraisal under the policy due to the costs inherent in the process and its tendency to reduce their recovery. It was also suggested that delaying appraisal and ultimate payment of the loss is economically beneficial to the insurance company. Given the multiple years of delay, the attorney's fees, and other litigation costs undoubtedly incurred by both litigants atop the appraisal costs, it is doubtful that either will reap more monetary benefit than anyone would have if appraisal were invoked soon after the dispute arose in 2013. Humming "I need money, that's what I want,"[1] sometimes results in "you can't always get what you want but if you try sometimes you might . . . get what you need,"[2] or deserve. We reverse.

*Standard of Review*

Being that it filed a traditional motion for summary judgment, Germania had the burden to prove the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *Mad-Mag Dev., L.L.C. v. Cargle*, No. 07-16-00132-CV, 2017 Tex. App. LEXIS 5891, at *1 (Tex. App.—Amarillo June 26, 2017, no pet.) (mem. op.). In deciding if it carried that burden, we accept as true all evidence favorable to the nonmovant (i.e., Hall) and indulge in every reasonable inference and resolve all doubts regarding the evidence in the nonmovant's favor. *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *Mad-Mag Dev., L.L.C. v. Cargle*, 2017 Tex. App. LEXIS 5891, at *1. Authority also prevents us from affirming summary

---

[1] Due nod to the hit factory of Mr. Gordy's Motown.
[2] Due nod to Misters Jagger and Richards.

judgment on grounds unmentioned in the written motion. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010).

*Summary Judgment*

The underlying dispute arose from a storm that struck the area in May of 2013. It resulted in damage to Hall's home and other property insured by Germania. A claim was made, and an adjuster was assigned to assess the loss. He ultimately valued the net claim to be approximately $13,000. In June of 2013, Germania tendered Hall two checks totaling $9,700. The sum was derived after making adjustments for the deductible and depreciation. Hall found the amount unacceptable, after which Germania issued Hall another check for about $1,200 in October of 2013. Hall remained unsatisfied.

Hall engaged his own adjuster to estimate the loss. That person conducted his inspection in May of 2014 and valued the loss at about $76,600. Whether this was disclosed to Germania is unclear. What is certain, though, is that Hall sued Germania by the end of May 2014. The causes of action alleged were 1) breached contract, 2) violation of the Texas Prompt Pay Act, 3) violation of chapter 541 of the Texas Insurance Code, and 4) violation of the Texas Deceptive Trade Practices Act.

Germania answered the suit in June of 2014. But not until October of 2014 did the insurer move to compel an appraisal under the insurance contract. It made the demand after accusing Hall of neglecting his own obligation to complete the process before filing suit, even though either party had the right to require it.

An appraisal ensued. It was finalized on February 12, 2016, when the second of the two appraisers signed it. Together, they valued the loss at $31,497, plus change.

4

Given that decision, Germania issued a check for $18,566.32 payable to Hall. The check was dated February 20, 2016, and apparently sent to the insurer's attorney. The latter then drafted a letter dated February 25, 2016, to counsel for Hall, which letter purported to enclose the check. In writing the letter, counsel for Germania mentioned a joint motion to dismiss Hall's suit and conditioned the negotiation of the check upon Hall agreeing to dismiss the suit. That is, he told opposing counsel that: "[t]he check is to be held in trust and not distributed until dismissal documents have been signed and forwarded to our office." Needless to say, Hall did not agree to that condition.[3]

Germania subsequently filed the summary judgment underlying this appeal. It contended therein that:

> [a]s Germania invoked the appraisal provision of his Homeowners' Policy and as Germania has complied with the policy terms by paying the award, Plaintiff is now estopped from maintaining a breach of contract claim as a matter of law. Additionally, Plaintiff has no extra-contractual claims because he has suffered no independent injury that would otherwise entitle him to damages and because Germania properly handled and timely investigated his claim. Thus, summary judgment is warranted and appropriate as to all of Plaintiff's causes of action.

The trial court granted the motion thereby denying Hall any recovery. Hall appealed.

*Issue One – Estoppel Defense*

Hall initially contends that the trial court erred in granting summary judgment because Germania failed to establish, as a matter of law, essential elements of its estoppel defense as a matter of law. The elements were "acceptance [and] timeliness of the payment." We sustain the issue in part.

As previously mentioned, appraisal clauses found in insurance contracts have been deemed enforceable for quite some time. Furthermore, compliance with such

---

[3] The evidence of record fails to reveal the status of the check. Whether it eventually was cashed is unknown.

clauses affords the parties to the agreement opportunity to raise estoppel as a means of settling debate regarding damages recoverable in a suit for breached contract. That is, the "effect of an appraisal award is to estop one party . . . from contesting the issue of damages, in a suit on the insurance contract, leaving only the question of liability." *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 797-98 (Tex. App.—Amarillo 1995, writ denied); *accord Nat'l Sec. Fire & Cas. Co. v. Hurst,* __S.W.3d__, __, 2017 Tex. App. LEXIS 4664, at *6-7 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet.) (stating the same); *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 264-65 (Tex. App—San Antonio 2016, pet. denied) (stating the same). Yet, estoppel is an affirmative defense, and the onus normally falls upon the defendant to assert it. *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d at 797-98.

That the defense was asserted by Germania through its motion for summary judgment imposed upon the insurer one other burden; it had to prove its entitlement to the defense as a matter of law. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996) (stating that "[w]hen a party moves for summary judgment based upon an affirmative defense, the movant must establish each element of its defense as a matter of law"); *Bruno Indep. Living Aids v. Yzaguirre*, No. 13-15-00408-CV, 2016 Tex. App. LEXIS 3253, at *5-6 (Tex. App.—Corpus Christi Mar. 31, 2016, no pet.) (mem. op.) (stating the same). And, again, under the standard of review, we view the evidence touching upon the defense in a manner most favorable to the nonmovant (Hall) and resolve against the movant any doubt as to the existence of a genuine issue of material fact on the estoppel defense. *Garcia v. State Farm Lloyds*, 514 S.W.3d at 265.

6

Estoppel tends to be an amoebic defense available in different settings. It is amoebic in a sense because its elements may change depending on the setting. Here, the defense arises from contract, as opposed to the common law. By including a provision in the insurance contract relating to appraisal, the parties have effectively adopted a procedure for calculating loss and cannot disregard it. *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. at 631-32. So, where the value of the loss is in dispute and the contract provides for the manner of calculating that loss, calculating it in accordance with the contract terms generally prevents the parties from asserting the loss to have some other value. In other words, they agreed to be bound to the results of the appraisal and, consequently, are estopped from seeking damages based upon some other calculation.

Thus, the terms of the appraisal clause and other relevant contractual provisions would logically affect the elements of the ensuing estoppel claim. This is most likely why others have said that "[b]ecause courts seek to implement the intention of the ***parties as expressed in the language of a contract***, it has long been the rule in Texas that an ***appraisal award made pursuant to the provisions of an insurance contract*** is binding and enforceable," *Floyd Circle Partners, LLC v. Republic Lloyds*, No. 05-16-00244-CV, 2017 Tex. App. LEXIS 6906, at *18 (Tex. App.—Dallas July 24, 2017, no pet.) (mem. op.) (emphasis added), and "tender of the full amount owed ***pursuant to the conditions of an appraisal clause*** is all that is required to estop the insured from raising a breach of contract claim." *Nat'l Security Fire & Cas. Co. v. Hurst*, 2017 Tex. App. LEXIS 4664, at *8 (emphasis added).

Given the aforementioned quotes from *Nat'l Security* and *Floyd Circle*, it is clear that payment of the loss (or at least tender of payment) as calculated via the appraisal clause is elemental to the applicability of estoppel. Indeed, failing to at least tender the appraised value hardly denotes compliance with the intent of the parties as expressed in their insurance agreement. Here, though, the pivotal question is not so much payment but rather when it was to occur. Hall suggests that Germania had a five-day window based on the contract while Germania argues that it need have only been timely. We resolve the controversy by turning to the policy and general jurisprudence applicable to contracts.

To be sure, expressly specifying in the policy a time for performance of the particular obligation (i.e., payment after appraisal) would render that period controlling. If no period was specified, all is not lost. Under that circumstance, we would revert to the tenets of the common law relating to agreements. One such tenant provides that "where no time of performance is stated in a contract, the law will imply a reasonable time." *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (Tex. 1944); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 246-47 (Tex. App.—Texarkana 2005, no pet.).[4]

Like estoppel, the idea of a "reasonable time" is also a bit amoebic, or "relative," as noted by sister courts. *Vlasak v. Taxco, Inc.,* No. 01-16-00191-CV, 2017 Tex. App. LEXIS 6337, at *19 (Tex. App.—Houston [1st Dist.] July 11, 2017, no pet.), *quoting,*

---

[4] The court in *Moore* also said that as a "general rule . . . a contract to pay money, which does not specify a date of payment, is enforceable as soon as the contract is made." *Moore v. Dilworth*, 179 S.W.2d at 942. The latter passage from *Moore* seems particularly interesting. No other Texas opinion could be found reiterating the proposition after *Moore*, and the only authority cited by the Supreme Court to support it was the initial version of the legal encyclopedia American Jurisprudence. While that version of the encyclopedia was unavailable, a later one was not. In volume 17 of American Jurisprudence 2d, under § 337 of the topic "Contracts," the writer explained that when the contract fails to specify the date of payment, the law deems the amount due and payable when the party fully performs his obligation under the contract and nothing remains to be done except paying the amount due. 17 Am. Jur *2d* Contracts § 337, *citing McCandlish v. Estate of Timberlake*, 497 S.W.2d 191, 195-96 (Mo. Ct. App. 1973).

*Chen v. Parkwood Creek Owner's Ass'n, Inc.,* No. 05-10-01511-CV, 2012 Tex. App. LEXIS 7347 (Tex. App.—Dallas Aug. 30, 2012, no pet.). For instance, it excludes unnecessary delay and "'denotes such promptitude as the circumstances will allow for the action called for by the contract.'" *Id.* So too is it affected by or dependent upon the facts and circumstances of the particular case. *Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 869-70 (Tex. App.—Fort Worth 2011, no pet.). This most likely is why it normally encompasses a question of fact to be decided by the fact-finder based upon the circumstances peculiar to the dispute and contract. *Id.* (stating that the question is one of fact). Yet, that rule is subject to change as well when the underlying facts are undisputed. In that scenario, whether one performed within a "reasonable time" becomes a question of law. *Id.*

With the foregoing being said, we turn to the record at bar. The appraisal clause found in Section 10, paragraph 10 of the Germania insurance policy stated:

> **Appraisal**: If you and we fail to agree on the amount of loss, either can make a written demand for appraisal. Each will then select an independent appraiser, and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge or a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the loss to each item.
>
> If the appraisers fail to agree they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.
>
> Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

(Emphasis in original). Under paragraph 12 of Section 10 of the same agreement appears the following language:

**Loss Payment**.  We will adjust all losses with you.  We will pay you unless some other person named in the policy is legally entitled to receive payment.

a. If we notify you that we will pay your claim, or part of your claim, we must make payment not later than the 5th **business day** after we notify you.

b. If payment of your claim or part of your claim requires the performance of an act by you, we must make payment not later than the 5th **business day** after the date you perform the act.

(Emphasis in original).  As can be seen, nothing in paragraph 10 specifies any particular date by which the loss derived via the appraisal procedure must be paid.  Rather, it deals with the calculation (not payment) of the loss when the parties cannot agree on its monetary value and its wording serves that purpose.  On the other hand, payment of loss is dealt with in paragraph 12.  One reading that provision easily sees that it speaks of 1) payment of the loss, 2) the time within which to pay the loss, and 3) when that time period begins.  The time to pay is within five business days, and when that period begins to run is either the date 1) the insurer notifies the insured that some aspect of the claim will be paid or 2) the insured performs all acts required of him.  Missing from the words of paragraph 12 though is language alluding to the appraisal under paragraph 10.[5]

---

[5] That paragraph 10 and paragraph 12 were intended to cover distinct, as opposed to intertwined, matters is further exemplified by two scenarios.  For instance, the latter paragraph speaks of paying the loss and the time within which to do that.  Logically, before Germania could pay or represent that it would pay the loss, the loss would have to be valued or calculated.  For those who deal in rhetorical questions, how could it agree to pay a particular monetary loss if it had yet to determine what that monetary loss was?  And, if the parties were unable to agree on the value, appraisal is the means for settling the controversy.  So, conceptually, the appraisal could possibly happen before the insurer represents that it would pay any part of the claim or loss and thereby triggers the time within which to pay.  On the other hand, if the insurer had represented to pay at least part of the claim, like it did here, then it had five days to do so.  But what if the parties came to disagree about the amount of the loss it calculated and incorporated into the ensuing check? In that situation, the insurer had the contractual right to demand an appraisal under paragraph 10.  Pursuing an appraisal with its attendant time delays related to each party selecting appraisers, conducting dual appraisals, the appraisers selecting an umpire if the appraised sums differed, a court selecting an umpire if the appraisers could not agree on one, and the umpire

Nor do we find mention of when to pay after the appraisal in any other part of the insurance contract. Ways for interjecting such terminology into the policy were offered us. Yet, they involve rewriting parts of the agreement that, from their existing context and words, fail to evince that those parts were ever intended to designate when payment after appraisal was to be made. They would also obligate us to create language explaining whether payment after appraisal meant such things as 1) payment after each appraiser signed the final calculation, 2) payment after the final calculation was sent by the appraisers to the insurer, or 3) payment after the insurer receives the appraisal to which it agreed to be bound. None of those topics are covered in the existing agreement.

Simply put, we cannot "rewrite . . . the contract merely because . . . one [or both] of the parties comes to dislike its provisions or thinks that something else is needed in it." *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26-27 (Tex. App.—Amarillo 2000, no pet.). And, we make no effort to violate that prohibition here. The parties are left to their agreement, and their agreement says nothing about when payment is to be made after appraisal under paragraph 10. So, they are left to live with the common law rule. That means Germania had a reasonable time to pay once the appraisal was completed. Whether it complied with that edict depended on the facts and circumstances of the case, excluding "unnecessary delay" while considering such "promptitude as the circumstances will allow for the action called for by the contract."

---

selecting the final appraisal amount hardly suggests that the procedure could be accomplished within five days of the date Germania said it would pay part of the claim. So, the appraisal process would seem to be a circumstance that extended or otherwise altered the time periods specified in paragraph 12. Yet, both scenarios illustrate that paragraph 10 does not dictate the time of payment (or even of appraisal) and paragraph 12 with its time limits does not necessarily apply when a party demands an appraisal.

11

The undisputed facts and circumstances appearing of record included 1) loss being initially appraised by an adjuster on behalf of Germania, 2) Hall deeming the amount of the appraisal deficient, 3) the eventual appraisal of the loss under paragraph 10, 4) the appraisal being finalized by February 12, 2016, 5) Germania receiving the appraisal on February 15, 2016, 6) Germania issuing a subsequent check to Hall ten days later on February 24, 2016, and 7) counsel for Germania receiving the check and drafting a letter dated February 25, 2016, mentioning the check and the terms of its negotiation. Yet, we could not find evidence of the date on which the letter and check were actually sent to Hall or his attorney.[6] Nor did we find evidence of the check being received by Hall or his attorney, the date of receipt, or the negotiation of the check by Hall or his attorney. We further note that, though Germania agreed (in the contract) to be bound by the appraisal award, tender of the check encompassing that award was subject to conditions. The effect of appending conditions to payment despite the language in the contract could make one question whether Germania intended to delay or actually delayed payment while the conditions it imposed were met.

We mention one other potential circumstance and it relates to the time periods in paragraph 12. While those periods do not specify when payment after appraisal was to be made, they nevertheless evince a joint intent that payment should occur rather quickly. Five days is not a lot of time. Furthermore, Germania previously had agreed not only to pay the claim but also to be bound by the appraisal award. Whether the eleven-day period between Germania receiving the appraisal award and sending the

---

[6] Germania alleged in its motion for summary judgment that the check was mailed to Hall's attorney on the day the letter was written. Yet, the allegation was not accompanied with supporting reference to any document or other evidence. Additionally, our own review of the record failed to uncover such supporting evidence.

check to its attorney comports with the intent underlying paragraph 12 is reasonably debatable. Whether counsel's effort to condition Hall's ability to cash the check comports with the intent underlying paragraph 12 is also reasonably debatable. The latter seems especially true since Germania had agreed previously to pay the claim and be bound by the appraisal award. This, of course, assumes counsel actually sent the letter and check on February 25th.

In short, the evidence of record coupled with the missing information created material issues of fact. This prevented the trial court from determining as a matter of law that Germania paid the appraisal award within a reasonable time. Or, at the very least, pertinent facts missing from the record prevent us from holding that the trial court correctly found, as a matter of law, that Germania paid the award within a reasonable time after the appraisal. Being unable to so hold and because the defense of estoppel was dependent upon proof of payment within a reasonable time, we must conclude that Germania failed to establish, as a matter of law, the defense. Consequently, it did not prove, as a matter of law, its entitlement to summary judgment on the claims of breached contract. So, again, we sustain issue one.

*Issue Two – Extra-Contractual Claims*

Hall next argues that the trial court erred in granting summary judgment favorable to Germania on his extra-contractual claims. We sustain the issue as well.

Germania averred in its motion for summary judgment that without a breach of contact claim, Hall had no extra-contractual causes of action sounding in common law or statutory tort. That is, Germania alleged that the viability of Hall's extra-contractual claims was directly related to the viability of his claims for breached contract. Because

13

it established that Hall was estopped from pursuing the contract claims, he could not pursue the others, according to the insurer. However, it did not prove its entitlement to summary judgment on the defense of estoppel and, therefore, the breach of contract claims. Thus, the foundation underlying Germania's argument for summary judgment on those extra-contractual claims is non-existent.

We reverse the summary judgment and remand the cause for further proceedings.


Brian Quinn
Chief Justice